KEVIN C. POWERS, General Counsel
Nevada State Bar No. 6781
JAIME K. BLACK, Chief Employment Counsel
Nevada State Bar No. 11668
TARA C. ZIMMERMAN, Senior Principal Deputy Employment Counsel
Nevada State Bar No. 12146
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
Email: kpowers@lcb.state.nv.us; jaime.black@lcb.state.nv.us; tara.zimmerman@lcb.state.nv.us
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DREW J. RIBAR, | |
| Plaintiff, | **Case No. 3:25-cv-00090-ART-CSD** |
| v. | |
| STATE OF NEVADA; NEVADA LEGISLATIVE COUNSEL BUREAU; KEVIN C. POWERS, in his official and individual capacity; LOBBYIST REGISTRAR, in their official and individual capacity; and DOE DEFENDANTS 1-10, | **DEFENDANTS' MOTION TO DISMISS COMPLAINT AND RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| Defendants. | |

Defendants State of Nevada; Nevada Legislative Counsel Bureau; Kevin C. Powers, in his official and individual capacity; and Lobbyist Registrar, in their official and individual capacity (collectively "Legislative Defendants"), by and through their counsel the Legal Division of the Legislative Counsel Bureau ("LCB Legal"), hereby file their: (1) motion to dismiss Plaintiff Ribar's complaint for declaratory and injunctive relief and damages (ECF No. 1); and (2) response in opposition to Plaintiff Ribar's motion for preliminary injunction (ECF No. 4), both of which were served on Legislative Defendants on February 21, 2025.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Background.

In his complaint and motion for preliminary injunction, Ribar raises federal constitutional claims pursuant to 42 U.SC. § 1983 for alleged violations of his civil rights under the First Amendment to the Federal Constitution.  Ribar also raises state constitutional claims alleging violations of his rights under Article 1, Sections 9 and 10 of the Nevada Constitution, which guarantee rights equivalent to the rights guaranteed by the First Amendment.  See Univ. & Cmty. Coll. Sys. v. Nevadans for Sound Gov't, 120 Nev. 712, 722 (2004).  Ribar asserts federal-question jurisdiction under 28 U.SC. § 1331 and federal civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3)-(4).

Ribar challenges Legislative Defendants' interpretation and application of the provisions of NRS Chapter 218H and Joint Standing Rule 25 of the Senate and Assembly for the 83rd Session of the Nevada Legislature adopted in Assembly Concurrent Resolution No. 1 (Feb. 3, 2025).[1] Under those provisions, a person is not permitted to register as a lobbyist, whether paid or unpaid, and also be granted media credentials by the Senate and Assembly.  When a person is granted such media credentials, the person may be granted the privilege of accessing any areas designated for members of a bona fide news medium on the floor or in the chambers of the Senate and Assembly, subject to the approval, regulation, and supervision of the Majority Leader of the Senate and the Speaker of the Assembly.

However, persons registered as lobbyists are not required to obtain such media credentials in order to carry out any journalism or news gathering functions in other unrestricted areas of the legislative chambers or in other unrestricted areas of the Legislative Building, such as in committee rooms or legislative halls.  Therefore, even though registered lobbyists cannot obtain

---

[1]  Available at https://www.leg.state.nv.us/Session/83rd2025/Bills/ACR/ACR1_EN.pdf.

1    such media credentials under NRS Chapter 218H and Joint Standing Rule No. 25, registered

2    lobbyists still may carry out any journalism or news gathering functions in the Legislative

3    Building without such media credentials, except registered lobbyists cannot be granted the

4    privilege of accessing the media areas designated on the legislative floor or in the legislative

5    chambers where lobbying activities are generally restricted.

6        **II.  Plaintiff's claims for declaratory and injunctive relief and damages against all Legislative Defendants must be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3) because, at the time of filing the complaint, Plaintiff did not have Article III constitutional standing.**

7

8

9        Under FRCP 12(b)(1) and 12(h)(3), the Court must dismiss claims for relief when it lacks

10   subject-matter jurisdiction to adjudicate those claims.   Because Article III standing is a

11   prerequisite to subject-matter jurisdiction, the Court must dismiss claims when a plaintiff lacks

12   Article III standing to bring the claims.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir.

13   2004).  To establish Article III standing to bring claims for declaratory and injunctive relief:

14       [A] plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

15

16

17   Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (quoting Friends of the Earth v. Laidlaw

18   Envtl. Servs., 528 U.S. 167, 180-81 (2000)).

19       Furthermore, under the time-of-filing rule, the Court must determine whether there is

20   standing based on the facts and parties as they existed when the original complaint was filed.[2]

21   Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992); Davis v. FEC, 554 U.S. 724, 734

22

23   [2]  The court may recognize exceptions to the time-of-filing rule only in rare and extraordinary circumstances that are not present in this case.  See Grupo Dataflux v. Atlas Glob. Grp., 541 U.S. 567, 570-82 (2004); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832-38 (1989); Mullaney v. Anderson, 342 U.S. 415, 416-17 (1952).

24

1    (2008); <u>Friends of the Earth</u>, 528 U.S. at 189; <u>Haro v. Sebelius</u>, 747 F.3d 1099, 1108 (9th Cir.

2    2014); <u>Biodiversity Legal Found. v. Badgley</u>, 309 F.3d 1166, 1171 (9th Cir. 2002); <u>White v. Lee</u>,

3    227 F.3d 1214, 1243 (9th Cir. 2000).  The time-of-filing rule applies even if the complaint is later

4    amended.  <u>Schreiber Foods v. Beatrice Cheese</u>, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005); <u>S. Utah</u>

5    <u>Wilderness Alliance v. Palma</u>, 707 F.3d 1143, 1152-53 (10th Cir. 2013).

6          At the time of filing the complaint, Plaintiff had been granted media credentials by the

7    Senate and Assembly.  Even while holding those media credentials, Plaintiff may lobby on behalf

8    of himself without being a registered lobbyist.  NRS 218H.080(1).  The only limitation on Plaintiff

9    is that, while holding those media credentials, Plaintiff cannot lobby on behalf of a third-party

10   because he cannot hold those media credentials and also be a registered lobbyist.  NRS 218H.080;

11   Joint Standing Rule 25.  However, at the time of filing the complaint, Plaintiff did not plead any

12   factual allegations that he intended to lobby on behalf of a third-party.  Therefore, at the time

13   filing the complaint, Plaintiff failed to show that he is under threat of suffering an injury-in-fact

14   that is concrete and particularized and is actual and imminent.  Without pleading any factual

15   allegations that he intended to lobby on behalf of a third-party, any alleged injury by Plaintiff is

16   purely conjectural or hypothetical.

17         Under such circumstances, Plaintiff's claims for declaratory and injunctive relief and

18   damages against all Legislative Defendants must be dismissed for lack of subject-matter

19   jurisdiction under FRCP 12(b)(1) and 12(h)(3) because, at the time of filing the complaint,

20   Plaintiff did not have Article III constitutional standing.  For that reason, Legislative Defendants'

21   motion to dismiss must be granted, and Plaintiff's motion for preliminary injunction must be

22   denied as a matter of law.

23

24

1

2

3

**III.    Plaintiff's claims for declaratory, injunctive and monetary relief against the State and the LCB and Plaintiff's claims for monetary damages against General Counsel Powers and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(1) and 12(h)(3) because those claims are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment.**

4

5

6

7

8

9

10

11

12

13

14

The Eleventh Amendment prohibits federal courts from exercising subject-matter jurisdiction over any federal claims that seek any type of relief against the State and its agencies, including the Legislature and its agencies, and any federal claims that seek monetary relief against state officials acting in their official capacity, unless the State has expressly waived its Eleventh Amendment immunity or Congress has expressly abrogated such immunity pursuant to its power under section 5 of the Fourteenth Amendment.  College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 668-70 (1999); Romano v. Bible, 169 F.3d 1182, 1185-86 (9th Cir. 1999).  Nevada has not waived its Eleventh Amendment immunity.  NRS 41.031(3); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).  Nor has Congress abrogated such immunity for section 1983 claims.  Quern v. Jordan, 440 U.S. 332, 345 (1979), *overruled on other grounds by* Hafer v. Melo, 502 U.S. 21, 27 (1991).

15

16

17

18

19

20

Consequently, Plaintiff's claims for declaratory, injunctive and monetary relief against the State and the LCB and Plaintiff's claims for monetary damages against General Counsel Powers and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(1) and 12(h)(3) because those claims are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment. For that reason, Legislative Defendants' motion to dismiss must be granted, and Plaintiff's motion for preliminary injunction must be denied as a matter of law.

21

22

23

24

**IV.    Plaintiff's claims for declaratory, injunctive and monetary relief against the State and the LCB and Plaintiff's claims for monetary damages against General Counsel Powers and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(6) because Plaintiff cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law.**

Under FRCP 12(b)(6), the Court must dismiss a plaintiff's claims when they fail to state a claim upon which relief can be granted as a matter of law.  In this case, Plaintiff brings claims under the federal civil rights statute in section 1983.  However, under section 1983, the State and its agencies, including the Legislature and its agencies, are not "persons" subject to a civil rights action under section 1983.  <u>Will v. Mich. Dep't State Police</u>, 491 U.S. 58, 62-71 (1989).  Therefore, Plaintiff cannot obtain any type of relief against the State and its agencies under section 1983, including declaratory, injunctive and monetary relief.  <u>Allah v. Comm'r of Dep't Corr. Servs.</u>, 448 F.Supp. 1123, 1125 (N.D.N.Y. 1978) ("It is well established that state agencies are not 'persons' for purposes of the Civil Rights Acts. This is true whether the relief being sought is injunctive and declaratory relief or damages."); <u>Ill. Dunesland Pres. Soc'y v. Ill. Dep't Nat. Res.</u>, 461 F.Supp.2d 666, 671 (N.D. Ill 2006) ("[T]here is no support for the proposition that claims for injunctive relief may be brought under § 1983 against state agencies.").  In addition, Plaintiff cannot obtain monetary relief against state officials acting in their official capacity under section 1983.  <u>Will</u>, 491 U.S. at 71 & n.10.

For example, in <u>Rivera Concepcion v. Puerto Rico</u>, 682 F.Supp.2d 164, 172 (D.P.R. 2010), the plaintiff brought claims under section 1983 against the Commonwealth of Puerto Rico and its Legislative Assembly and claims under section 1983 for monetary relief against Jose Aponte and Kenneth McClintock in their official capacity as presiding officers of each legislative house.  The district court dismissed all claims under section 1983 against these defendants, stating that:

> The law is clear, however, that neither the Senate nor the Legislative Assembly, nor any agency or official representing the Commonwealth of Puerto Rico may be considered a person pursuant to section 1983 for the purposes of liability.  Plaintiffs' section 1983 claims against the Commonwealth of Puerto Rico, the Legislative Assembly and all other branches of the Commonwealth of Puerto Rico, and both Jose Aponte and Kenneth McClintock in their official capacities are hereby **DISMISSED WITH PREJUDICE.**

<u>Id.</u> at 172; <u>see also</u> <u>Deniz v. Municipality of Guaynabo</u>, 285 F.3d 142, 146 (1st Cir. 2002) ("For

section 1983 purposes, Puerto Rico is deemed equivalent to a state.").

Therefore, Plaintiff's claims for declaratory, injunctive and monetary relief against the State and the LCB and Plaintiff's claims for monetary damages against General Counsel Powers and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(6) because Plaintiff cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law. For that reason, Legislative Defendants' motion to dismiss must be granted, and Plaintiff's motion for preliminary injunction must be denied as a matter of law.

**V.    Plaintiff cannot, as a matter of law, obtain declaratory or injunctive relief against General Counsel Powers or the Lobbyist Registrar under section 1983 because neither is the state official who has been charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25.**

Under the Ex parte Young exception to a state's Eleventh Amendment immunity from suit in federal court, a plaintiff may bring federal claims under section 1983 asking for prospective declaratory or injunctive relief against state officials acting in their official capacities to enjoin their allegedly unconstitutional actions in administering state law. Ex parte Young, 209 U.S. 123, 155-56 (1908); L.A. Branch NAACP v. L.A. Unified Sch. Dist., 714 F.2d 946, 952 (9th Cir. 1983). However, the connection necessary to trigger the Ex parte Young exception to Eleventh Amendment immunity "must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law." Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998).

Under Nevada state law, the LCB Director is the state official who has been charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25, but Plaintiff has failed to the name the LCB Director as a defendant.  NRS 218H.505(1); Joint Standing Rule 25.  Neither General Counsel Powers nor the Lobbyist Registrar are charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25.

1    Therefore, Plaintiff cannot, as a matter of law, obtain declaratory or injunctive relief against

2    General Counsel Powers or the Lobbyist Registrar under section 1983 because neither is the state

3    official who has been charged by the Legislature with the authority to administer NRS Chapter

4    218H and Joint Standing Rule 25.  For that reason, Legislative Defendants' motion to dismiss

5    must be granted, and Plaintiff's motion for preliminary injunction must be denied as a matter of

6    law.

7         **VI.    Plaintiff's claims for declaratory, injunctive and monetary relief against the State
          and the LCB and Plaintiff's claims for declaratory, injunctive and monetary relief against
8         General Counsel Powers and the Lobbyist Registrar in their official and individual
          capacity must be dismissed under FRCP 12(b)(6) because they are entitled to absolute
9         legislative immunity as a matter of law.**

10        The federal common law provides legislators and legislative staff with absolute legislative

11   immunity in federal court for any civil claims under section 1983 arising from acts that fall within

12   the sphere of legitimate legislative activity. Tenney v. Brandhove, 341 U.S. 367, 372-76 (1951);

13   Gravel v. United States, 408 U.S. 606, 616-18 (1972); Eastland v. U.S. Servicemen's Fund, 421

14   U.S. 491, 507-10 (1975); Lake Country Estates v. Tahoe Reg'l Planning Agency, 440 U.S. 391,

15   403-06 (1979); Bogan v. Scott-Harris, 523 U.S. 44, 54-56 (1998). The Supreme Court has

16   generally "equated the legislative immunity to which state legislators are entitled under § 1983 to

17   that accorded Congressmen under the Constitution." Supreme Ct. of Va. v. Consumers Union, 446

18   U.S. 719, 733 (1980). Under absolute legislative immunity, legislators and legislative staff are

19   protected in federal court from having to defend themselves against civil claims challenging

20   actions taken by them in their official legislative capacity, regardless of whether those claims seek

21   monetary relief or declaratory and injunctive relief.  Id. at 731-34; Reeder v. Madigan, 780 F.3d

22   799, 802-06 (7th Cir. 2015) (holding that state legislators and legislative staff were entitled to

23   absolute legislative immunity for their decision to deny media credentials to reporter employed by

24   entity related to lobbying organization).

1    The Supreme Court has consistently held that absolute legislative immunity "will be read

2    broadly to effectuate its purposes." United States v. Johnson, 383 U.S. 169, 180 (1966). The

3    Supreme Court has described the primary purpose of absolute legislative immunity as follows:

> The purpose of this immunity is to insure that the legislative function may be
> performed independently without fear of outside interference.  To preserve legislative
> independence, we have concluded that legislators engaged in the sphere of legitimate
> legislative activity should be protected not only from the consequences of litigation's
> results but also from the burden of defending themselves.

7    Consumers Union, 446 U.S. at 731-32 (internal quotations and citations omitted). The Supreme

8    Court has also determined that the protection of absolute legislative immunity "applies not only to

9    a Member but also to his aides insofar as the conduct of the latter would be a protected legislative

10    act if performed by the Member himself." Gravel, 408 U.S. at 618.

11        Several federal courts have found that absolute legislative immunity protects legislators and

12    legislative staff from actions for monetary, declaratory and injunctive relief which challenge

13    decisions that restrict or prohibit lobbyists, the press or the public from having access to legislative

14    chambers or other legislative facilities in order to protect the safety, integrity and due functioning

15    of the legislative process. Reeder v. Madigan, 780 F.3d 799, 802-06 (7th Cir. 2015); Nat'l Ass'n

16    of Soc. Workers v. Harwood, 69 F.3d 622, 629-35 (1st Cir. 1995); Consumers Union v. Periodical

17    Correspondents' Ass'n, 515 F.2d 1341, 1347-51 (D.C. Cir. 1975); Empower Texans v. Geren, 388

18    F.Supp.3d 738, 742-48 (W.D. Tex. 2019), vacated as moot, 977 F.3d 367, 372 (5th Cir. 2020)

19    (finding that Empower's appeal had become moot because "Empower never asked this court to

20    expedite its appeal.").

21        These federal courts have applied the protection of absolute legislative immunity to

22    decisions curtailing access to legislative chambers or other legislative facilities because of their

23    "view of a legislature's House as its castle." Harwood, 69 F.3d at 632. And these federal courts

24    have recognized that controlling access to legislative chambers or other legislative facilities is "a

core legislative function" that must be protected by absolute legislative immunity because "[a] contrary rule would make it nearly impossible for a legislature to function, as it would potentially subject legislators and their aides to liability for every floor-access decision they make." Reeder, 780 F.3d at 803-04.  As explained by the Seventh Circuit:

> These [Supreme Court] cases support the conclusion that the activity in question here—the decision whether to confer media credentials on an applicant—was legislative in nature, and integrally so.  As the Supreme Court explained in *Gravel*, legislative immunity extends to actions that are "necessary to prevent indirect impairment of such deliberations."  408 U.S. at 625 (internal quotation marks omitted).  The rules that the defendants invoked in their decision with respect to Reeder demonstrate that his exclusion from the press boxes on the floor of the Assembly is designed to avoid the impairment of deliberations there.  Illinois House Rule 30(d) says that no person "required to be registered as a lobbyist . . . shall be allowed access to the floor of the House at any time during the session."  Illinois Senate Rule 4–3(d) says the same thing.  The Illinois Lobbyist Registration Act exempts certain journalists from the requirement to register with the state as lobbyists, but not those working for publications "owned by or published by . . . not-for-profit corporations engaged primarily in endeavors other than dissemination of news."  25 ILCS 170/3(a)(2).

> These rules reflect a judgment on the part of the Illinois General Assembly that certain persons or entities engaged in reporting must register as lobbyists and work under the rules that apply to lobbyists, including the rule forbidding presence on the floor.  The rules spell out why this prohibition exists: these people are "directly or indirectly interested in defeating or promoting any pending legislative measure."  It can easily be inferred from the Lobbyist Registration Act, along with the House and Senate rules, that the legislature believes that the presence of lobbyists risks an impairment of deliberations.  The policy therefore has as its basis an important legislative purpose.  The IPI is plainly an advocacy organization, and even though it did not register as a lobbyist in 2014, both the House and Senate determined that it should have.  It is hardly a stretch to characterize control of access to the legislative floor as a core legislative function.

Reeder, 780 F.3d at 803.

Thus, Plaintiff's claims for declaratory, injunctive and monetary relief against the State and the LCB and Plaintiff's claims for declaratory, injunctive and monetary relief against General Counsel Powers and the Lobbyist Registrar in their official and individual capacity must be dismissed under FRCP 12(b)(6) because they are entitled to absolute legislative immunity as a

matter of law.  For that reason, Legislative Defendants' motion to dismiss must be granted, and Plaintiff's motion for preliminary injunction must be denied as a matter of law.

**VII.  Plaintiff's state law claims for declaratory, injunctive and monetary relief against the State and the LCB and Plaintiff's state law claims for declaratory, injunctive and monetary relief against General Counsel Powers and the Lobbyist Registrar in their official and individual capacity must be dismissed.**

Because Plaintiff fails to state a federal claim as a matter of law, the Court must decline to exercise supplemental jurisdiction over Plaintiff's state law claims for declaratory, injunctive and monetary relief against the State and the LCB and Plaintiff's state law claims for declaratory, injunctive and monetary relief against General Counsel Powers and the Lobbyist Registrar in their official and individual capacity.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). For that reason, Legislative Defendants' motion to dismiss must be granted, and Plaintiff's motion for preliminary injunction must be denied as a matter of law.

## <u>CONCLUSION</u>

Based upon the foregoing, Legislative Defendants respectfully ask the Court to grant their motion to dismiss and deny Plaintiff's motion for preliminary injunction as a matter of law.

DATED:    This __**21st**__ day of March, 2025.

By:    /s/  Kevin C. Powers
     **KEVIN C. POWERS**, General Counsel
     Nevada State Bar No. 6781
     **JAIME K. BLACK**, Chief Employment Counsel
     Nevada State Bar No. 11668
     **TARA C. ZIMMERMAN**, Senior Principal Deputy Employment Counsel
     Nevada State Bar No. 12146
     NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
     *Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal Division, and that on the **__21st__** day of March, 2025, pursuant to FRCP 5(b) and LR Part IC, I filed and served a true and correct copy of Legislative Defendants' Motion to Dismiss Complaint and Response in Opposition to Motion for Preliminary Injunction by (1) using the Court's CM/ECF system for electronic service and (2) sending it via electronic mail pursuant to FRCP 5(b)(2)(E) and the parties' consent in writing to service by electronic mail, directed to the following:

Drew J. Ribar
3480 Pershing Ln.
Washoe Valley, NV 89704
const2audit@gmail.com
*Plaintiff Pro Se*

/s/  Kevin C. Powers
An Employee of the Legislative Counsel Bureau

-12-