KEVIN C. POWERS, General Counsel
Nevada State Bar No. 6781
JAIME K. BLACK, Chief Employment Counsel
Nevada State Bar No. 11668
TARA C. ZIMMERMAN, Senior Principal Deputy Employment Counsel
Nevada State Bar No. 12146
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
Email: kpowers@lcb.state.nv.us; jaime.black@lcb.state.nv.us; tara.zimmerman@lcb.state.nv.us
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DREW J. RIBAR,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF NEVADA; NEVADA LEGISLATIVE COUNSEL BUREAU; KEVIN C. POWERS, in his official and individual capacity; LOBBYIST REGISTRAR, in their official and individual capacity; and DOE DEFENDANTS 1-10,<br><br>    Defendants. | **Case No. 3:25-cv-00090-ART-CSD**<br><br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |

Defendants State of Nevada; Nevada Legislative Counsel Bureau; Kevin C. Powers, in his official and individual capacity; and Lobbyist Registrar, in their official and individual capacity (collectively "Legislative Defendants"), by and through their counsel the Legal Division of the Legislative Counsel Bureau ("LCB Legal"), hereby file this Response in Opposition to Plaintiff Ribar's Motion for Leave to File First Amended Complaint (ECF No. 22).

Based on the allegations in the proposed first amended complaint, Plaintiff's proposed amendments are futile because they are legally insufficient as a matter of law to save the original complaint from dismissal. Therefore, the Court should: (1) deny Plaintiff's motion for leave to file

a first amended complaint (ECF No. 22); (2) deny Plaintiff's motion for preliminary injunction (ECF No. 4); and (3) grant Legislative Defendants' motion to dismiss Plaintiff's original complaint for declaratory and injunctive relief and damages (ECF No. 1), without leave to amend.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Background.

In his original complaint and motion for preliminary injunction that were served on Legislative Defendants on February 21, 2025, Ribar raised federal constitutional claims pursuant to 42 U.SC. § 1983 for alleged violations of his civil rights under the First Amendment to the Federal Constitution. Ribar also raised state constitutional claims alleging violations of his rights under Article 1, Sections 9 and 10 of the Nevada Constitution, which guarantee rights equivalent to the rights guaranteed by the First Amendment. See Univ. & Cmty. Coll. Sys. v. Nevadans for Sound Gov't, 120 Nev. 712, 722 (2004). Ribar asserted federal-question jurisdiction under 28 U.SC. § 1331 and federal civil-rights jurisdiction under 28 U.SC. § 1343(a)(3)-(4).

Ribar challenges Legislative Defendants' interpretation and application of the provisions of NRS Chapter 218H and Joint Standing Rule 25 of the Senate and Assembly for the 83rd Session of the Nevada Legislature adopted in Assembly Concurrent Resolution No. 1 (Feb. 3, 2025).[1] Under those provisions, a person is not permitted to register as a lobbyist, whether paid or unpaid, and also be granted media credentials by the Senate and Assembly. When a person is granted such media credentials, the person may be granted the privilege of accessing any areas designated for members of a bona fide news medium on the floor or in the chambers of the Senate and Assembly, subject to the approval, regulation, and supervision of the Majority Leader of the Senate and the Speaker of the Assembly.

---

[1]  Joint Standing Rule 25 is reproduced in the Addendum following the Memorandum of Points and Authorities.  Assembly Concurrent Resolution No. 1 is available at: https://www.leg.state.nv.us/Session/83rd2025/Bills/ACR/ACR1_EN.pdf.

However, persons registered as lobbyists are not required to obtain such media credentials in order to carry out any journalism or news gathering functions in other unrestricted areas of the legislative chambers or in other unrestricted areas of the Legislative Building, such as in committee rooms or legislative halls. Therefore, even though registered lobbyists cannot obtain such media credentials under NRS Chapter 218H and Joint Standing Rule No. 25, registered lobbyists still may carry out any journalism or news gathering functions in the Legislative Building without such media credentials, except registered lobbyists cannot be granted the privilege of accessing the media areas designated on the legislative floor or in the legislative chambers where lobbying activities are generally restricted.

On March 21, 2025, Legislative Defendants filed a motion to dismiss Ribar's original complaint and a response in opposition to Ribar's motion for preliminary injunction (ECF Nos. 16 & 17). Ribar did not file a response in opposition to the motion to dismiss or a reply in support of his motion for preliminary injunction. Instead, on April 22, 2025, Ribar filed a motion for leave to file a first amended complaint (ECF No. 22).

In the proposed first amended complaint, Ribar purports to add Brenda J. Erdoes as a Defendant in her former capacity as the Director of the LCB. However, Ms. Erdoes retired from the LCB more than a year ago on April 1, 2024. Therefore, for purposes of the pending motions, the current Acting Director of the LCB, Diane C. Thornton, is the party whom Ribar is attempting to add as a Defendant in the proposed first amended complaint.

## II.    Standards of review.

When a plaintiff seeks to amend the complaint while a defendant's motion to dismiss is pending, the FRCP does not "dictate that a pending motion to dismiss is automatically rendered moot." Pettaway v. Nat'l Recovery Solutions, LLC, 955 F.3d 299, 303 (2d Cir. 2020). Instead, "the district court has the option of either denying the pending motion [to dismiss] as moot or

evaluating the motion [to dismiss] in light of the facts alleged in the amended complaint." Id. at

304. If the district court determines that the proposed amendments are futile because they are

legally insufficient as a matter of law to save the original complaint from dismissal, the district

court must reject the proposed amendments and grant the motion to dismiss the original complaint

as a matter of law. Id. at 304-05. As stated by the Second Circuit, "[t]his is a sound approach that

promotes judicial economy by obviating the need for multiple rounds of briefing addressing

complaints that are legally insufficient." Id. at 303.

Thus, even though the district court "should freely give leave [to amend] when justice so

requires" as stated in FRCP 15(a)(2), the district court is not obligated to do so when the proposed

amendments are futile because they are legally insufficient as a matter of law to save the original

complaint from dismissal. See Estate of Strickland v. Nevada Cnty., 69 F.4th 614, 623 (9th Cir.

2023), cert. denied, 144 S. Ct. 559 (2024). Simply put, "[f]utility of amendment can, by itself,

justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.

1995). As stated in the District of Nevada:

> Although "[t]he court should freely give leave when justice so requires," the court
> is not obligated to do so. Fed. R. Civ. P. 15(a)(2). The court need not give leave to
> amend where "it determines that the pleading could not possibly be cured by the
> allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)
> (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, "leave to
> amend may be denied if it appears to be futile or legally insufficient." Miller v.
> Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) (citing Gabrielson v.
> Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir. 1986)). The standard to be
> applied when determining the legal sufficiency of a proposed amendment is identical
> to that on a motion to dismiss for failure to state a claim. Id.

WFTLVO1, LLC v. AmTrust N. Am., Inc., 636 F. Supp. 3d 1217, 1225 (D. Nev. 2022).

**III.   Plaintiff's claims for declaratory and injunctive relief and damages against all
Legislative Defendants must be dismissed for lack of subject-matter jurisdiction under
FRCP 12(b)(1) and 12(h)(3) because, at the time of filing the complaint, Plaintiff did not
have Article III constitutional standing.**

-4-

Under FRCP 12(b)(1) and 12(h)(3), the Court must dismiss claims for relief when it lacks subject-matter jurisdiction to adjudicate those claims. Because Article III standing is a prerequisite to subject-matter jurisdiction, the Court must dismiss claims when a plaintiff lacks Article III standing to bring the claims. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish Article III standing to bring claims for declaratory and injunctive relief:

> [A] plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (quoting Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000)).

Furthermore, under the time-of-filing rule, the Court must determine whether there is standing based on the facts and parties as they existed when the original complaint was filed.[2] Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992); Davis v. FEC, 554 U.S. 724, 734 (2008); Friends of the Earth, 528 U.S. at 189; Haro v. Sebelius, 747 F.3d 1099, 1108 (9th Cir. 2014); Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1171 (9th Cir. 2002); White v. Lee, 227 F.3d 1214, 1243 (9th Cir. 2000). The time-of-filing rule applies even if the complaint is later amended. Schreiber Foods v. Beatrice Cheese, 402 F.3d 1198, 1203 n.3 (Fed. Cir. 2005); S. Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1152-53 (10th Cir. 2013).

In the proposed first amended complaint, Plaintiff alleges that he had suffered an injury in fact at the time of filing the original complaint because, under Joint Standing Rule 25 and NRS Chapter 218H, he could not be granted or hold media credentials from the Senate and Assembly

---

[2] The Court may recognize exceptions to the time-of-filing rule only in rare and extraordinary circumstances that are not present in this case. See Grupo Dataflux v. Atlas Glob. Grp., 541 U.S. 567, 570-82 (2004); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832-38 (1989); Mullaney v. Anderson, 342 U.S. 415, 416-17 (1952).

1    and also register as an unpaid lobbyist in order to lobby for his proposed bill, which he self-titled

2    the "Constitutional Rights and Public Service Act of 2025" (ECF Nos. 22-1 & 22-8). However, at

3    the time of filing the original complaint, Plaintiff had not suffered any injury in fact because

4    neither Joint Standing Rule 25 nor NRS Chapter 218H prohibited Plaintiff from being granted or

5    holding media credentials from the Senate and Assembly and also lobbying for his proposed bill

6    on his own behalf.

7          Under Joint Standing Rule 25(8), a person is disqualified from being granted or holding

8    media credentials if the person registers as a lobbyist or engages in any lobbying activities that

9    would require the person to register as a lobbyist during any regular or special session pursuant to

10   NRS Chapter 218H. However, under NRS Chapter 218H, a person is required to register as a

11   lobbyist only if the person "communicates directly with a member of the Legislative Branch **on**

12   **behalf of someone other than himself or herself** to influence legislative action, whether or not

13   any compensation is received for the communication." NRS 218H.080(1) (emphasis added);

14   NRS 218H.200(1). Thus, at the time of filing the original complaint, neither Joint Standing

15   Rule 25 nor NRS Chapter 218H prohibited Plaintiff from being granted or holding media

16   credentials from the Senate and Assembly and also lobbying for his proposed bill on his own

17   behalf because Plaintiff was not required to be a registered lobbyist under NRS Chapter 218H in

18   order to lobby for his proposed bill on his own behalf. Consequently, at the time of filing the

19   original complaint, Plaintiff had not suffered any injury in fact to establish Article III

20   constitutional standing.

21         In a futile attempt to overcome the lack of Article III constitutional standing at the time of

22   filing the original complaint, Plaintiff alleges in the proposed first amended complaint that, several

23   weeks after he filed the original complaint on February 14, 2025, several third-parties have made

24   subsequent offers to pay Plaintiff in order to lobby on their behalf as a registered lobbyist under

NRS Chapter 218H (ECF Nos. 22-1, 22-4, 22-5 & 22-6). However, it is well established that "standing is determined at the time the action is brought . . . and we generally look to when the complaint was first filed, not to subsequent events" to determine if a plaintiff has standing. S. Utah Wilderness Alliance, 707 F.3d at 1153 (quoting Mink v. Suthers, 482 F.3d 1244, 1254 (10th Cir. 2007)); Friends of the Earth, 528 U.S. at 180 ("[W]e have an obligation to assure ourselves that [Friends of the Earth] had Article III standing at the outset of the litigation."); Davis, 554 U.S. at 735 ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."). Therefore, Plaintiff cannot rely on any of the subsequent events set forth in the proposed first amended complaint to overcome the lack of Article III constitutional standing when the original complaint was first filed.

Under such circumstances, Plaintiff's claims for declaratory and injunctive relief and damages against all Legislative Defendants must be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3) because, at the time of filing the complaint, Plaintiff did not have Article III constitutional standing. For that reason, Plaintiff's motion for leave to file a first amended complaint must be denied, Plaintiff's motion for preliminary injunction must be denied, and Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**IV.    Plaintiff's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Plaintiff's claims for monetary damages against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(1) and 12(h)(3) because those claims are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment.**

The Eleventh Amendment prohibits federal courts from exercising subject-matter jurisdiction over any federal claims that seek any type of relief against the State and its agencies, including the Legislature and its agencies, and any federal claims that seek monetary relief against state officials acting in their official capacity, unless the State has expressly waived its Eleventh

Amendment immunity or Congress has expressly abrogated such immunity pursuant to its power under section 5 of the Fourteenth Amendment. <u>College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 668-70 (1999); <u>Romano v. Bible</u>, 169 F.3d 1182, 1185-86 (9th Cir. 1999). Nevada has not waived its Eleventh Amendment immunity. NRS 41.031(3); <u>Austin v. State Indus. Ins. Sys.</u>, 939 F.2d 676, 677 (9th Cir. 1991). Nor has Congress abrogated such immunity for section 1983 claims. <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979), *overruled on other grounds by* <u>Hafer v. Melo</u>, 502 U.S. 21, 27 (1991).

Consequently, Plaintiff's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Plaintiff's claims for monetary damages against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(1) and 12(h)(3) because those claims are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment. For that reason, Plaintiff's motion for leave to file a first amended complaint must be denied, Plaintiff's motion for preliminary injunction must be denied, and Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**V.    Plaintiff's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Plaintiff's claims for monetary damages against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(6) because Plaintiff cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law.**

Under FRCP 12(b)(6), the Court must dismiss a plaintiff's claims when they fail to state a claim upon which relief can be granted as a matter of law. In this case, Plaintiff brings claims under the federal civil rights statute in section 1983. However, under section 1983, the State and its agencies, including the Legislature and its agencies, are not "persons" subject to a civil rights action under section 1983. <u>Will v. Mich. Dep't State Police</u>, 491 U.S. 58, 62-71 (1989). Therefore, Plaintiff cannot obtain any type of relief against the State and its agencies under section 1983,

including declaratory, injunctive and monetary relief. <u>Allah v. Comm'r of Dep't Corr. Servs.</u>, 448

F. Supp. 1123, 1125 (N.D.N.Y. 1978) ("It is well established that state agencies are not 'persons'

for purposes of the Civil Rights Acts. This is true whether the relief being sought is injunctive and

declaratory relief or damages."); <u>Ill. Dunesland Pres. Soc'y v. Ill. Dep't Nat. Res.</u>, 461 F.Supp.2d

666, 671 (N.D. Ill. 2006) ("[T]here is no support for the proposition that claims for injunctive

relief may be brought under § 1983 against state agencies."). In addition, Plaintiff cannot obtain

monetary relief against state officials acting in their official capacity under section 1983. <u>Will</u>, 491

U.S. at 71 & n.10.

For example, in <u>Rivera Concepcion v. Puerto Rico</u>, 682 F.Supp.2d 164, 172 (D.P.R. 2010),

the plaintiff brought claims under section 1983 against the Commonwealth of Puerto Rico and its

Legislative Assembly and claims under section 1983 for monetary relief against Jose Aponte and

Kenneth McClintock in their official capacity as presiding officers of each legislative house. The

district court dismissed all claims under section 1983 against these defendants, stating that:

> The law is clear, however, that neither the Senate nor the Legislative Assembly, nor
> any agency or official representing the Commonwealth of Puerto Rico may be
> considered a person pursuant to section 1983 for the purposes of liability. Plaintiffs'
> section 1983 claims against the Commonwealth of Puerto Rico, the Legislative
> Assembly and all other branches of the Commonwealth of Puerto Rico, and both Jose
> Aponte and Kenneth McClintock in their official capacities are hereby **DISMISSED
> WITH PREJUDICE**.

<u>Id.</u> at 172; <u>see also</u> <u>Deniz v. Municipality of Guaynabo</u>, 285 F.3d 142, 146 (1st Cir. 2002) ("For

section 1983 purposes, Puerto Rico is deemed equivalent to a state.").

Therefore, Plaintiff's claims for declaratory, injunctive, and monetary relief against the State

and the LCB and Plaintiff's claims for monetary damages against Acting Director Thornton,

General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed

under FRCP 12(b)(6) because Plaintiff cannot obtain such relief under 42 U.S.C. § 1983 as a

matter of law. For that reason, Plaintiff's motion for leave to file a first amended complaint must

be denied, Plaintiff's motion for preliminary injunction must be denied, and Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**VI.   Plaintiff cannot, as a matter of law, obtain declaratory or injunctive relief against General Counsel Powers or the Lobbyist Registrar under section 1983 because neither is the state official who has been charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25.**

Under the Ex parte Young exception to a state's Eleventh Amendment immunity from suit in federal court, a plaintiff may bring federal claims under section 1983 asking for prospective declaratory or injunctive relief against state officials acting in their official capacities to enjoin their allegedly unconstitutional actions in administering state law. Ex parte Young, 209 U.S. 123, 155-56 (1908); L.A. Branch NAACP v. L.A. Unified Sch. Dist., 714 F.2d 946, 952 (9th Cir. 1983). However, the connection necessary to trigger the Ex parte Young exception to Eleventh Amendment immunity "must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law." Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998).

Under Nevada state law, Acting Director Thornton is the state official who has been charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25. NRS 218H.505(1); Joint Standing Rule 25. Neither General Counsel Powers nor the Lobbyist Registrar are charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25.

In the proposed first amended complaint, Plaintiff alleges that General Counsel Powers and the Lobbyist Registrar have the necessary connection with administering NRS Chapter 218H and Joint Standing Rule 25 to apply the Ex parte Young exception (ECF No. 22-1). Plaintiff also alleges that General Counsel Powers personally denied Plaintiff's "dual registration" by sending him an email which restated the following legal opinion that LCB Legal had provided to a

requester under NRS 218F.710(2):

> Based on the plain language of the Lobbying Act [in NRS Chapter 218H], several well-established rules of statutory construction, and long-standing legislative rules and policies, it is the opinion of LCB Legal that a person is not permitted to register as a lobbyist, whether paid or unpaid, and also obtain media credentials.

(ECF No. 22-1 & 22-7.) Plaintiff's allegations are legally insufficient to invoke the Ex parte Young exception against General Counsel Powers and the Lobbyist Registrar.

First, for the Ex parte Young exception to apply to particular state officers or employees, they "must be cloaked with a duty to enforce the laws of the state and must threaten or be about to commence civil or criminal proceedings to enforce an unconstitutional act." Snoeck, 153 F.3d at 987. Plaintiff has not cited any provisions of NRS Chapter 218H or Joint Standing Rule 25 that gives either General Counsel Powers or the Lobbyist Registrar any power or duty to enforce those provisions. Indeed, under Nevada state law, Acting Director Thornton is the state official who has been charged by the Legislature with the power and duty to enforce those provisions. NRS 218H.505(1); Joint Standing Rule 25.

Second, it is well established that the power and duty of a state officer to give legal opinions under state law is not sufficient to invoke the Ex parte Young exception against that state officer. Free Speech Coal., Inc. v. Anderson, 119 F.4th 732, 740-41 (10th Cir. 2024) (holding that state law requiring Utah Attorney General to "give the attorney general's opinion in writing . . . upon any question of law relating to the office of the requester" was not sufficient to invoke the Ex parte Young exception against Attorney General); Doyle v. Hogan, 1 F.4th 249, 256 (4th Cir. 2021) (holding that state law requiring Maryland Attorney General to "[g]ive his opinion in writing . . . on any legal matter or subject" was not sufficient to invoke the Ex parte Young exception against Attorney General); McBurney v. Cuccinelli, 616 F.3d 393, 400 (4th Cir. 2010) (holding that Virginia Attorney General's statutory duty to issue advisory opinions under state law

1   was not sufficient to make him a proper party to litigation challenging state law under the Ex parte

2   Young exception). As stated by the Fourth Circuit, "[s]imply advising other [officers] does not

3   give the Attorney General control over enforcing the Act." Doyle, 1 F.4th at 256.

4       Under Nevada state law, "[u]pon the request of the Director [of the LCB] . . . the Legislative

5   Counsel or the General Counsel may give a legal opinion orally or in writing upon any question of

6   law, including, without limitation, existing law and suggested, proposed and pending legislation."

7   NRS 218F.710(2). When General Counsel Powers sent Plaintiff an email which restated the legal

8   opinion that LCB Legal had provided to Acting Director Thornton under NRS 218F.710(2),

9   General Counsel Powers could not have personally denied Plaintiff's "dual registration" because

10  General Counsel Powers does not have any power or duty under state law to enforce the

11  provisions of NRS Chapter 218H or Joint Standing Rule 25. Instead, under Nevada state law,

12  Acting Director Thornton is the state official who has been charged by the Legislature with the

13  power and duty to enforce those provisions. NRS 218H.505(1); Joint Standing Rule 25.

14      Therefore, Plaintiff cannot, as a matter of law, obtain declaratory or injunctive relief against

15  General Counsel Powers or the Lobbyist Registrar under section 1983 because neither is the state

16  official who has been charged by the Legislature with the authority to administer NRS Chapter

17  218H and Joint Standing Rule 25. For that reason, Plaintiff's motion for leave to file a first

18  amended complaint must be denied, Plaintiff's motion for preliminary injunction must be denied,

19  and Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave

20  to amend.

21      **VII.   Plaintiff's claims for declaratory, injunctive, and monetary relief against the
    State and the LCB and Plaintiff's claims for declaratory, injunctive, and monetary relief**

22  **against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in
    their official and individual capacity must be dismissed under FRCP 12(b)(6) because they**

23  **are entitled to absolute legislative immunity as a matter of law.**

24

The federal common law provides legislators and legislative staff with absolute legislative immunity in federal court for any civil claims under section 1983 arising from acts that fall within the sphere of legitimate legislative activity. Tenney v. Brandhove, 341 U.S. 367, 372-76 (1951); Gravel v. United States, 408 U.S. 606, 616-18 (1972); Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 507-10 (1975); Lake Country Estates v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 403-06 (1979); Bogan v. Scott-Harris, 523 U.S. 44, 54-56 (1998). The Supreme Court has generally "equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." Supreme Ct. of Va. v. Consumers Union, 446 U.S. 719, 733 (1980). Under absolute legislative immunity, legislators and legislative staff are protected in federal court from having to defend themselves against civil claims challenging actions taken by them in their official legislative capacity, regardless of whether those claims seek monetary relief or declaratory and injunctive relief. Id. at 731-34; Reeder v. Madigan, 780 F.3d 799, 802-06 (7th Cir. 2015) (holding that state legislators and legislative staff were entitled to absolute legislative immunity for their decision to deny media credentials to reporter employed by entity related to lobbying organization).

The Supreme Court has consistently held that absolute legislative immunity "will be read broadly to effectuate its purposes." United States v. Johnson, 383 U.S. 169, 180 (1966). The Supreme Court has described the primary purpose of absolute legislative immunity as follows:

> The purpose of this immunity is to insure that the legislative function may be performed independently without fear of outside interference. To preserve legislative independence, we have concluded that legislators engaged in the sphere of legitimate legislative activity should be protected not only from the consequences of litigation's results but also from the burden of defending themselves.

Consumers Union, 446 U.S. at 731-32 (internal quotations and citations omitted). The Supreme Court has also determined that the protection of absolute legislative immunity "applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative

-13-

1  act if performed by the Member himself." <u>Gravel</u>, 408 U.S. at 618.

2      Several federal courts have found that absolute legislative immunity protects legislators and

3  legislative staff from actions for monetary, declaratory, and injunctive relief which challenge

4  decisions that restrict or prohibit lobbyists, the press, or the public from having access to

5  legislative chambers or other legislative facilities in order to protect the safety, integrity, and due

6  functioning of the legislative process. <u>Reeder v. Madigan</u>, 780 F.3d 799, 802-06 (7th Cir. 2015);

7  <u>Nat'l Ass'n of Soc. Workers v. Harwood</u>, 69 F.3d 622, 629-35 (1st Cir. 1995); <u>Consumers Union</u>

8  <u>v. Periodical Correspondents' Ass'n</u>, 515 F.2d 1341, 1347-51 (D.C. Cir. 1975); <u>Empower Texans</u>

9  <u>v. Geren</u>, 388 F.Supp.3d 738, 742-48 (W.D. Tex. 2019), *vacated as moot*, 977 F.3d 367, 372 (5th

10 Cir. 2020) (finding that Empower's appeal had become moot because "Empower never asked this

11 court to expedite its appeal.").

12     These federal courts have applied the protection of absolute legislative immunity to

13 decisions curtailing access to legislative chambers or other legislative facilities because of their

14 "view of a legislature's House as its castle." <u>Harwood</u>, 69 F.3d at 632. And these federal courts

15 have recognized that controlling access to legislative chambers or other legislative facilities is "a

16 core legislative function" that must be protected by absolute legislative immunity because "[a]

17 contrary rule would make it nearly impossible for a legislature to function, as it would potentially

18 subject legislators and their aides to liability for every floor-access decision they make." <u>Reeder</u>,

19 780 F.3d at 803-04. As explained by the Seventh Circuit:

20     These [Supreme Court] cases support the conclusion that the activity in question
   here—the decision whether to confer media credentials on an applicant—was

21 legislative in nature, and integrally so. As the Supreme Court explained in <u>Gravel</u>,
   legislative immunity extends to actions that are "necessary to prevent indirect

22 impairment of such deliberations." 408 U.S. at 625 (internal quotation marks omitted).
   The rules that the defendants invoked in their decision with respect to Reeder

23 demonstrate that his exclusion from the press boxes on the floor of the Assembly is
   designed to avoid the impairment of deliberations there. Illinois House Rule 30(d) says

24 that no person "required to be registered as a lobbyist . . . shall be allowed access to

the floor of the House at any time during the session." Illinois Senate Rule 4–3(d) says the same thing. The Illinois Lobbyist Registration Act exempts certain journalists from the requirement to register with the state as lobbyists, but not those working for publications "owned by or published by . . . not-for-profit corporations engaged primarily in endeavors other than dissemination of news." 25 ILCS 170/3(a)(2).

These rules reflect a judgment on the part of the Illinois General Assembly that certain persons or entities engaged in reporting must register as lobbyists and work under the rules that apply to lobbyists, including the rule forbidding presence on the floor. The rules spell out why this prohibition exists: these people are "directly or indirectly interested in defeating or promoting any pending legislative measure." It can easily be inferred from the Lobbyist Registration Act, along with the House and Senate rules, that the legislature believes that the presence of lobbyists risks an impairment of deliberations. The policy therefore has as its basis an important legislative purpose. The IPI is plainly an advocacy organization, and even though it did not register as a lobbyist in 2014, both the House and Senate determined that it should have. It is hardly a stretch to characterize control of access to the legislative floor as a core legislative function.

Reeder, 780 F.3d at 803.

Furthermore, when a party raises legislative immunity as an affirmative defense, the affirmative defense should be resolved at the earliest possible stage in the proceedings. Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 511 n.17 (1975). This is because legislative immunity is not only a defense to a finding of liability, it is also an entitlement not to stand trial at all or face the costly and intrusive burdens of civil or administrative investigations, discovery and litigation. Dombrowski v. Eastland, 387 U.S. 82, 84-85 (1967). Accordingly, "legislative immunity provides immunity from suit, not simply immunity from damages." Woods v. Gamel, 132 F.3d 1417, 1419 n.3 (11th Cir. 1998). As further explained by the Supreme Court, "[i]t is the purpose and office of the doctrine of legislative immunity . . . that legislators engaged 'in the sphere of legitimate legislative activity,' should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." Id. (citations omitted).

Thus, when an action is brought against legislators and legislative staff and it is established in a motion to dismiss that their conduct falls within the sphere of legitimate legislative activity,

1    the action must be dismissed as a matter of law before a hearing on the merits is conducted.

2    Tenney v. Brandhove, 341 U.S. 367, 370-79 (1951). Prompt dismissal is essential to preserve the

3    proper separation of powers among the branches of government, and "such motions [must] be

4    given the most expeditious treatment by district courts because one branch of Government is being

5    asked to halt the functions of a coordinate branch." Eastland, 421 U.S. at 511 n.17.

6        If the motion to dismiss is denied, the legislators and legislative staff have a right to an

7    immediate appeal and interlocutory judicial review because the protection of legislative immunity

8    "would be irreparably lost if an appeal had to await the final judgment." United States v. McDade,

9    28 F.3d 283, 288 (3d Cir. 1994). An immediate appeal is permitted "because the doctrine is

10   designed to protect legislators not only from ultimate liability, but also from the cost and

11   inconvenience of litigation." Gross v. Winter, 876 F.2d 165, 166 n.1 (D.C. Cir. 1989). Because the

12   protection of legislative immunity is vital to the separation of powers and because such protection

13   would be irreparably lost if an appeal had to await a final decision, the Supreme Court and lower

14   federal courts have repeatedly held that the denial of a motion to dismiss based on legislative

15   immunity is immediately appealable and subject to interlocutory judicial review. Helstoski v.

16   Meanor, 442 U.S. 500, 506-08 (1979); Larsen v. Senate of Pa., 152 F.3d 240, 245 (3d Cir. 1998);

17   Agromayor v. Colberg, 738 F.2d 55, 57-58 (1st Cir. 1984); Harhay v. Town of Ellington Bd. of

18   Educ., 323 F.3d 206, 210 (2d Cir. 2003); Youngblood v. DeWeese, 352 F.3d 836, 838-39 (3d Cir.

19   2003); Roberson v. Mullins, 29 F.3d 132, 134 n.1 (4th Cir. 1994); Williams v. Brooks, 945 F.2d

20   1322, 1325 (5th Cir. 1991); Maitland v. Univ. of Minn., 260 F.3d 959, 962 (8th Cir. 2001);

21   Chateaubriand v. Gaspard, 97 F.3d 1218, 1220 (9th Cir. 1996); Woods v. Gamel, 132 F.3d 1417,

22   1419 n.3 (11th Cir. 1998); Crymes v. DeKalb County, 923 F.2d 1482, 1484-85 (11th Cir. 1991);

23   Fields v. Office of Johnson, 459 F.3d 1, 4 n.1 (D.C. Cir. 2006); Gross v. Winter, 876 F.2d 165,

24   166 n.1 (D.C. Cir. 1989).

-16-

In the proposed first amended complaint, Plaintiff's allegations are legally insufficient to overcome the protection of absolute legislative immunity. Thus, Plaintiff's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Plaintiff's claims for declaratory, injunctive, and monetary relief against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official and individual capacity must be dismissed under FRCP 12(b)(6) because they are entitled to absolute legislative immunity as a matter of law. For that reason, Plaintiff's motion for leave to file a first amended complaint must be denied, Plaintiff's motion for preliminary injunction must be denied, and Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**VIII.   Plaintiff's state law claims for declaratory, injunctive, and monetary relief against the State and the LCB and Plaintiff's state law claims for declaratory, injunctive, and monetary relief against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official and individual capacity must be dismissed.**

Because Plaintiff fails to state a federal claim as a matter of law, the Court must decline to exercise supplemental jurisdiction over Plaintiff's state law claims for declaratory, injunctive, and monetary relief against the State and the LCB and Plaintiff's state law claims for declaratory, injunctive, and monetary relief against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official and individual capacity. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). For that reason, Plaintiff's motion for leave to file a first amended complaint must be denied, Plaintiff's motion for preliminary injunction must be denied, and Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

//

//

//

1

## <u>CONCLUSION</u>

2

Based upon the foregoing, Legislative Defendants respectfully ask the Court to: (1) deny

3

Plaintiff's motion for leave to file first amended complaint (ECF No. 22); (2) deny Plaintiff's

4

motion for preliminary injunction (ECF No. 4); and (3) grant Legislative Defendants' motion to

5

dismiss Plaintiff's complaint for declaratory and injunctive relief and damages (ECF No. 1),

6

without leave to amend.

7

DATED:    This  **6th**  day of May, 2025.

8

By:    /s/  Kevin C. Powers
**KEVIN C. POWERS**, General Counsel

9

Nevada State Bar No. 6781
**JAIME K. BLACK**, Chief Employment Counsel

10

Nevada State Bar No. 11668
**TARA C. ZIMMERMAN**, Senior Principal Deputy Employment Counsel

11

Nevada State Bar No. 12146
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION

12

*Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

**ADDENDUM**

**ACCREDITATION OF NEWS MEDIA**

   **Joint Standing Rule No. 25. Procedures and Standards for Accreditation; Disqualifications; Definition of "Bona Fide News Medium."**

   1.   If a person is accredited as a member of a bona fide news medium in accordance with the requirements in this Rule, the person may be granted the privilege of accessing any areas designated for members of a bona fide news medium on the floor or in the chambers of the Senate and Assembly, subject to the approval, regulation and supervision of the Majority Leader of the Senate and the Speaker of the Assembly.

   2.   If a person wants to be considered for accreditation as a member of a bona fide news medium, the person must complete and file an application for accreditation with the Director of the Legislative Counsel Bureau. The application must include:

   (a) The person's full name, telephone number and electronic mail address and a copy of a driver's license or other photo identification deemed sufficient by the Director to identify the person.

   (b) The name of each bona fide news medium that the person works for or represents and the business address, telephone number and electronic mail address of each such bona fide news medium.

   (c) Documentary or other evidence deemed sufficient by the Director to establish that the person works for or represents a bona fide news medium. Such evidence may include a copy of an identification badge issued by a bona fide news medium or, in the absence of such an identification badge, any other evidence deemed sufficient by the Director to establish that the person works for or represents a bona fide news medium.

   (d) Any other information or evidence that the Director determines is necessary to carry out the provisions of this Rule.

   3.   In addition to the requirements of subsection 2, the application must include:

   (a) A declaration that the person is not registered as a lobbyist pursuant to chapter 218H of NRS and, to the best of the person's knowledge and belief at that time, does not intend to register as a lobbyist or engage in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS.

   (b) An acknowledgment that, if the person is accredited as a member of a bona fide news medium and thereafter registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter, the person shall be deemed to have forfeited the person's accreditation, and the person must return the person's identification badge as a member of a bona fide news medium to the Legislative Counsel Bureau.

   4.   When any applications are filed pursuant to this Rule, the Director shall, as soon as reasonably practicable:

   (a) Review the applications for compliance with the requirements in this Rule and prepare lists naming the persons whose applications the Director has made a preliminary determination and recommendation that the applications comply with the requirements in this Rule;

   (b) Submit such lists to the Secretary of the Senate and the Chief Clerk of the Assembly for review and approval by the Majority Leader of the Senate and the Speaker of the Assembly; and

-19-

(c) Prepare identification badges for the persons named in such lists.

5.    The applications of the persons named in such lists and their accreditation as members of a bona fide news medium shall be deemed approved by the Majority Leader of the Senate and the Speaker of the Assembly if their names are read or entered into the Journals of the Senate and Assembly.

6.    Any decisions to approve, deny, suspend or revoke the accreditation of a member of a bona fide news medium, or discipline such a member for violations of any rules or policies, is at the sole discretion of the Majority Leader of the Senate and the Speaker of the Assembly.

7.    The Legislative Counsel Bureau shall act as the administrative liaison between any applicants or accredited members of a bona fide news medium and the Senate and Assembly for purposes of accepting and processing applications for accreditation, preparing and regulating identification badges and administering any other matters necessary to carry out the provisions of this Rule, but such actions by the Legislative Counsel Bureau do not affect the authority of the Senate and Assembly to govern their own chambers or otherwise determine privileges of the floor.

8.    A person is disqualified and barred from being accredited as a member of a bona fide news medium if the person registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter. If a person is accredited as a member of a bona fide news medium and thereafter registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter, the person shall be deemed to have forfeited the person's accreditation, and the person must return the person's identification badge as a member of a bona fide news medium to the Legislative Counsel Bureau.

9.    As used in this Rule, "bona fide news medium" means a commercial or non-profit news outlet providing:

(a) Print journalism, such as newspapers or magazines;

(b) Broadcast journalism, such as radio or television;

(c) Wire or news services for redistribution to other news organizations; or

(d) Online news services using electronic dissemination rather than conventional print or broadcast distribution.

[Assembly Concurrent Resolution No. 1 of the 2025 Session (File No. 7)]

**<u>CERTIFICATE OF SERVICE</u>**

 I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal Division, and that on the __6th__ day of May, 2025, pursuant to FRCP 5(b) and LR Part IC, I filed and served a true and correct copy of Legislative Defendants' Response in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint by (1) using the Court's CM/ECF system for electronic service and (2) sending it via electronic mail pursuant to FRCP 5(b)(2)(E) and the parties' consent in writing to service by electronic mail, directed to the following:

Drew J. Ribar
3480 Pershing Ln.
Washoe Valley, NV 89704
const2audit@gmail.com
*Plaintiff Pro Se*


/s/  Kevin C. Powers
An Employee of the Legislative Counsel Bureau