KEVIN C. POWERS, General Counsel
Nevada State Bar No. 6781
JAIME K. BLACK, Chief Deputy General Counsel
Nevada State Bar No. 11668
TARA C. ZIMMERMAN, Chief Employment Counsel
Nevada State Bar No. 12146
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
Email: kpowers@lcb.state.nv.us; jaime.black@lcb.state.nv.us; tara.zimmerman@lcb.state.nv.us
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DREW J. RIBAR, | |
| Plaintiff, | **Case No. 3:25-cv-00090-ART-CSD** |
| v. | |
| STATE OF NEVADA; NEVADA LEGISLATIVE COUNSEL BUREAU; KEVIN C. POWERS, in his official and individual capacity; LOBBYIST REGISTRAR, in their official and individual capacity; DIANE C. THORNTON, in her official capacity as the Acting Director of the Nevada Legislative Counsel Bureau; and DOE DEFENDANTS 1-10, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Defendants. | |

Defendants State of Nevada; Nevada Legislative Counsel Bureau ("LCB"); Kevin C. Powers, in his official and individual capacity; Lobbyist Registrar, in their official and individual capacity; and Diane C. Thornton, in her official capacity as the Acting Director of the LCB (collectively "Legislative Defendants"), by and through their counsel the Legal Division of the LCB ("LCB Legal"), hereby file their reply in support of motion to dismiss Plaintiff Ribar's first amended complaint ("FAC") for declaratory and injunctive relief and damages (ECF No. 28).

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  Ribar's claims for declaratory and injunctive relief and damages against all Legislative Defendants must be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3) because Ribar does not meet the requirements for Article III constitutional standing.**

In his opposition, Ribar fails to establish that, at the time of filing the original complaint, he suffered any injury in fact under NRS Chapter 218H and Joint Standing Rule 25. In his original complaint, motion for preliminary injunction, and FAC, Ribar alleged and argued that he suffered an injury in fact at the time of filing the original complaint because, under NRS Chapter 218H and Joint Standing Rule 25, he could not be granted or hold media credentials from the Senate and Assembly and also register as an unpaid lobbyist in order to lobby for his proposed bill, which he self-titled the "Constitutional Rights and Public Service Act of 2025" (ECF Nos. 1, 4, 28). In his opposition, Ribar appears to have abandoned those allegations and arguments. (ECF No. 34 at 2-3). Instead, Ribar now argues that his prior historical conduct before filing the original complaint, including his "YouTube commentary, political writing, policy drafting, and prior paid lobbyist registration [during previous legislative sessions]," demonstrate an intent to engage in paid lobbying for third persons during the 2025 legislative session when he filed the original complaint. (ECF No. 34 at 3).

However, such prior historical conduct does not demonstrate that Ribar suffered an injury in fact at the time of filing the original complaint. Under such circumstances, Ribar's claims for declaratory and injunctive relief and damages against all Legislative Defendants must be dismissed for lack of subject-matter jurisdiction under FRCP 12(b)(1) and 12(h)(3) because, at the time of filing the complaint, Ribar did not have Article III constitutional standing. For that reason, Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

Furthermore, a plaintiff must demonstrate an injury in fact and standing for each claim he seeks to press and for each form of relief that is sought. Davis, 554 U.S. at 734. With regard to all claims arising before the third-parties allegedly made offers to pay Ribar for his lobbying services on or about March 10, 2025, Ribar failed to demonstrate an injury in fact and standing for his pre-March 10 claims given that neither Joint Standing Rule 25 nor NRS Chapter 218H prohibited Ribar from being granted or holding media credentials from the Senate and Assembly and also lobbying for his proposed bill on his own behalf because Ribar was not required to be a registered lobbyist under NRS Chapter 218H in order to lobby for his proposed bill on his own behalf. Therefore, even if the Court favorably construes the allegations in the FAC to establish standing for any claims arising on or about March 10, 2025, the Court must dismiss all pre-March 10 claims against all Legislative Defendants because Ribar did not suffer any injury in fact to establish Article III constitutional standing for those pre-March 10 claims. For that reason, Legislative Defendants' motion to dismiss must be granted for those pre-March 10 claims, as a matter of law, without leave to amend.

**II.  Ribar's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Ribar's claims for monetary damages against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(1) and 12(h)(3) because those claims are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment.**

In his opposition, Ribar "withdraws all monetary claims against the State and the LCB." (ECF No. 34 at 3). However, Ribar fails to make any arguments regarding the Eleventh Amendment bar to several other claims for relief against Legislative Defendants. As thoroughly discussed in the motion to dismiss, the Eleventh Amendment bars federal courts from exercising subject-matter jurisdiction over any federal claims that **seek any type of relief** against the State and its agencies and any federal claims that seek **monetary relief** against state officials acting in their official capacity. See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,

527 U.S. 666, 668-70 (1999); <u>Romano v. Bible</u>, 169 F.3d 1182, 1185-86 (9th Cir. 1999); <u>Austin v. State Indus. Ins. Sys.</u>, 939 F.2d 676, 677 (9th Cir. 1991). Consequently, Ribar's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Ribar's claims for monetary damages against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(1) and 12(h)(3) because those claims are not within the subject-matter jurisdiction of the Court under the Eleventh Amendment. For that reason, Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**III.    Ribar's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Ribar's claims for monetary damages against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(6) because Ribar cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law.**

In his opposition, Ribar fails to make any arguments regarding the section 1983 bar to several claims for relief against Legislative Defendants. As thoroughly discussed in the motion to dismiss, under section 1983, the State and its agencies are not "persons" subject to a civil rights action under section 1983. Therefore, Ribar cannot obtain any type of relief against the State and its agencies under section 1983, including declaratory, injunctive and monetary relief. In addition, Ribar cannot obtain monetary relief against state officials acting in their official capacity under section 1983. <u>See</u> <u>Will v. Mich. Dep't State Police</u>, 491 U.S. 58, 62-71 (1989). Therefore, Ribar's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Ribar's claims for monetary damages against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official capacity must be dismissed under FRCP 12(b)(6) because Ribar cannot obtain such relief under 42 U.S.C. § 1983 as a matter of law. For that reason, Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

1    **IV.   Ribar cannot, as a matter of law, obtain declaratory or injunctive relief against General Counsel Powers or the Lobbyist Registrar under section 1983 because neither is the state official who has been charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25.**

2

3

4    In his opposition, Ribar states that he can seek prospective declaratory and injunctive relief

5    under section 1983 against Acting Director Thornton, General Counsel Powers, and the Lobbyist

6    Registrar in their official capacity under the Ex parte Young exception to a state's Eleventh

7    Amendment immunity from suit in federal court (ECF No. 34 at 3). Because Acting Director

8    Thornton is the state official who has been charged by the Legislature with the authority to

9    administer NRS Chapter 218H and Joint Standing Rule 25, the Eleventh Amendment does not bar

10   Ribar from seeking prospective declaratory and injunctive relief against Acting Director Thornton

11   based on the Ex parte Young exception (although such claims for relief against Acting Director

12   Thornton are barred as a matter of law for all the other reasons thoroughly discussed in the motion

13   to dismiss). With regard to General Counsel Powers and the Lobbyist Registrar, Ribar fails to

14   make any arguments demonstrating that either has been charged by the Legislature with the

15   authority to administer NRS Chapter 218H and Joint Standing Rule 25, which is required to

16   invoke the Ex parte Young exception. See Ex parte Young, 209 U.S. 123, 155-56 (1908); L.A.

17   Branch NAACP v. L.A. Unified Sch. Dist., 714 F.2d 946, 952 (9th Cir. 1983).

18   As thoroughly discussed in the motion to dismiss, the connection necessary to trigger the Ex

19   parte Young exception to Eleventh Amendment immunity "must be determined under state law

20   depending on whether and under what circumstances a particular defendant has a connection with

21   the challenged state law." Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998). Under Nevada

22   state law, Acting Director Thornton is the state official who has been charged by the Legislature

23   with the authority to administer NRS Chapter 218H and Joint Standing Rule 25. NRS

24   218H.505(1); Joint Standing Rule 25. Neither General Counsel Powers nor the Lobbyist Registrar

1    are charged by the Legislature with the authority to administer NRS Chapter 218H and Joint

2    Standing Rule 25.

3        First, for the <u>Ex parte Young</u> exception to apply to particular state officers or employees,

4    they "must be cloaked with a duty to enforce the laws of the state and must threaten or be about to

5    commence civil or criminal proceedings to enforce an unconstitutional act." <u>Snoeck</u>, 153 F.3d at

6    987. Ribar has not cited any provisions of NRS Chapter 218H or Joint Standing Rule 25 that gives

7    either General Counsel Powers or the Lobbyist Registrar any power or duty to enforce those

8    provisions. Indeed, under Nevada state law, Acting Director Thornton is the state official who has

9    been charged by the Legislature with the power and duty to enforce those provisions.

10    NRS 218H.505(1); Joint Standing Rule 25.

11        Second, it is well established that the power and duty of a state officer to give legal opinions

12    under state law is not sufficient to invoke the <u>Ex parte Young</u> exception against that state officer.

13    <u>See</u> <u>Free Speech Coal., Inc. v. Anderson</u>, 119 F.4th 732, 740-41 (10th Cir. 2024); <u>Doyle v. Hogan</u>,

14    1 F.4th 249, 256 (4th Cir. 2021); <u>McBurney v. Cuccinelli</u>, 616 F.3d 393, 400 (4th Cir. 2010). As

15    stated by the Fourth Circuit, "[s]imply advising other [officers] does not give the Attorney General

16    control over enforcing the Act." <u>Doyle</u>, 1 F.4th at 256.

17        Under Nevada state law, "[u]pon the request of the Director [of the LCB] . . . the Legislative

18    Counsel or the General Counsel may give a legal opinion orally or in writing upon any question of

19    law, including, without limitation, existing law and suggested, proposed and pending legislation."

20    NRS 218F.710(2). When General Counsel Powers sent Ribar an email which restated the legal

21    opinion that LCB Legal had provided to Acting Director Thornton under NRS 218F.710(2),

22    General Counsel Powers could not have personally denied Ribar's "dual registration" because

23    General Counsel Powers does not have any power or duty under state law to enforce the

24    provisions of NRS Chapter 218H or Joint Standing Rule 25. Instead, under Nevada state law,

Acting Director Thornton is the state official who has been charged by the Legislature with the power and duty to enforce those provisions. NRS 218H.505(1); Joint Standing Rule 25.

Therefore, Ribar cannot, as a matter of law, obtain declaratory or injunctive relief against General Counsel Powers or the Lobbyist Registrar under section 1983 because neither is the state official who has been charged by the Legislature with the authority to administer NRS Chapter 218H and Joint Standing Rule 25. For that reason, Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**V.    Ribar cannot, as a matter of law, obtain monetary damages against General Counsel Powers or the Lobbyist Registrar in their individual capacity under section 1983 because they are entitled to qualified immunity as a matter of law.**

In his opposition, Ribar states that he can seek "nominal damages" under section 1983 against General Counsel Powers and the Lobbyist Registrar in their individual capacity based on Hafer v. Melo, 502 U.S. 21, 25-31 (1991) (ECF No. 34 at 3). However, in this case, General Counsel Powers and the Lobbyist Registrar are entitled to qualified immunity as a matter of federal law. Qualified immunity protects state officers and employees from liability for discretionary functions unless (1) the official violated a federal constitutional right, and (2) the right was clearly established at the time the challenged conduct occurred. Lane v. Franks, 573 U.S. 228, 243 (2014). In this case, General Counsel Powers and the Lobbyist Registrar did not violate any clearly established federal constitutional rights at the time the challenged conduct occurred.

With regard to media credentialing systems in the United States Congress and state legislatures, those legislative bodies typically do not permit a person to act as a lobbyist, whether paid or unpaid, and also obtain media credentials. For example, in the United States Senate, applicants for media accreditation "must not be engaged in any lobbying" and must declare that they "will not do so while a member of the [Senate] Press Galleries." Ateba v. Jean-Pierre, 706 F. Supp. 3d 63, 75-85 (D.D.C. 2023), *aff'd*, Ateba v. Leavitt, 133 F.4th 114 (D.C. Cir. 2025).

Similarly, in the United States House of Representatives, applicants for media accreditation must declare that, while a member of the House Press Galleries, they "will not become engaged or assist, directly or indirectly, in any lobbying, promotion, advertising, or publicity activity intended to influence legislation or any other action of the Congress."[1] The Arizona Senate's Media Rules also provide that applicants for media accreditation "must not be engaged in any lobbying or advocacy." TGP Commc'ns LLC v. Sellers, 642 F. Supp. 3d 957, 965 (D. Ariz. 2022), *injunction pending appeal granted*, No. 22-16826, 2022 WL 17484331 (9th Cir. 2022), *and appeal dismissed*, 2023 WL 3698762 (9th Cir. 2023).

In several decisions that do not directly involve Congress and state legislatures, federal courts have determined that governmental regulations which prohibit accredited media members from being lobbyists are facially constitutional as reasonable and viewpoint-neutral regulations within media credentialing systems. See John K. MacIver Inst. for Pub. Policy v. Evers, 994 F.3d 602, 609-12 (7th Cir. 2021) ("MacIver"); Ateba, 706 F. Supp. 3d at 75-85; Ateba, 133 F.4th at 123-27; TGP Commc'ns, 642 F. Supp. at 963-70.  As explained by the Seventh Circuit:

> The criteria listed in numbers four and five of the memorandum are reasonably related to the viewpoint-neutral goal of increasing journalistic integrity by favoring media that avoid real or perceived conflicts of interest or entanglement with special interest groups, or **those that engage in advocacy or lobbying**.  Similar standards are also used by other governmental bodies such as the United States Congress.  There is nothing inherently viewpoint-based about these criteria[.]

MacIver, 994 F.3d at 610-11 (emphasis added). Finally, because Congress and state legislatures typically do not permit a person to act as a lobbyist, whether paid or unpaid, and also obtain media credentials, "[t]hat broadly shared judgment is entitled to respect." Minn. Voters Alliance v. Mansky, 585 U.S. 1, 16 (2018).

---

[1]  Available at https://periodical.house.gov/accreditation/rules-and-regulations.

-8-

Accordingly, based on legal precedent and the long-standing and broadly shared judgment of federal and state legislative bodies which do not permit a person to act as a lobbyist, whether paid or unpaid, and also obtain media credentials, General Counsel Powers and the Lobbyist Registrar did not violate any clearly established federal constitutional rights at the time the challenged conduct occurred. Therefore, Ribar cannot, as a matter of law, obtain monetary damages against General Counsel Powers or the Lobbyist Registrar in their individual capacity under section 1983 because they are entitled to qualified immunity as a matter of law. For that reason, Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**VI.    Ribar's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Ribar's claims for declaratory, injunctive, and monetary relief against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official and individual capacity must be dismissed under FRCP 12(b)(6) because they are entitled to absolute legislative immunity as a matter of law.**

In his opposition, Ribar states that absolute legislative immunity does not apply because enforcement of NRS Chapter 218H and Joint Standing Rule 25 is administrative and not legislative (ECF No. 34 at 4). Ribar is wrong as a matter of law.

Ribar challenges the constitutionality of NRS Chapter 218H and Joint Standing Rule 25, which were adopted by the Legislature within the sphere of legitimate legislative activity in order to preserve and protect the proper functioning of the legislative process. The Supreme Court has determined that the protection of absolute legislative immunity applies to a legislative member's exercise of legislative functions under such circumstances. See Tenney v. Brandhove, 341 U.S. 367, 372-76 (1951); Supreme Ct. of Va. v. Consumers Union, 446 U.S. 719, 733-34 (1980); Bogan v. Scott-Harris, 523 U.S. 44, 54-56 (1998). The Supreme Court has also determined that the protection of absolute legislative immunity "applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the

1    Member himself." <u>Gravel v. United States</u>, 408 U.S. 606, 618 (1972).

2        In this case, the legislative effect of NRS Chapter 218H and Joint Standing Rule 25 is to

3    preserve and protect the proper functioning of the legislative process by prohibiting registered

4    lobbyists from holding legislative House privileges that offer access to restricted areas on the floor

5    or in the chambers of the Senate and Assembly "designated for members of a bona fide news

6    medium." Joint Standing Rule 25(1). However, the legislative effect of NRS Chapter 218H and

7    Joint Standing Rule 25 does not prohibit registered lobbyists from carrying out any journalism or

8    news gathering functions in other unrestricted areas of the legislative chambers or in other

9    unrestricted areas of the Legislative Building, such as in committee rooms or legislative halls.

10   Consequently, the legislative effect of NRS Chapter 218H and Joint Standing Rule 25 is strictly a

11   legislative House access measure.

12       Because of federal courts' "view of a legislature's House as its castle," <u>Nat'l Ass'n of Soc.</u>

13   <u>Workers v. Harwood</u>, 69 F.3d 622, 632 (1st Cir. 1995), it is well established that both the

14   enactment and enforcement of such legislative House access measures, whether by legislative

15   members or staff, is protected by absolute legislative immunity. <u>Harwood</u>, 69 F.3d at 629-35;

16   <u>Reeder v. Madigan</u>, 780 F.3d 799, 802-06 (7th Cir. 2015); <u>Consumers Union v. Periodical</u>

17   <u>Correspondents' Ass'n</u>, 515 F.2d 1341, 1347-51 (D.C. Cir. 1975); <u>Empower Texans v. Geren</u>, 388

18   F.Supp.3d 738, 742-48 (W.D. Tex. 2019), *vacated as moot*, 977 F.3d 367, 372 (5th Cir. 2020).

19   Thus, as thoroughly discussed in the motion to dismiss, federal courts have recognized that

20   controlling access to legislative chambers is "a core legislative function" that must be protected by

21   absolute legislative immunity because "[a] contrary rule would make it nearly impossible for a

22   legislature to function, as it would potentially subject legislators and their aides to liability for

23   every floor-access decision they make." <u>Reeder</u>, 780 F.3d at 803-04.

24

Therefore, Ribar's allegations and arguments are legally insufficient to overcome the protection of absolute legislative immunity. As a result, Ribar's claims for declaratory, injunctive, and monetary relief against the State and the LCB and Ribar's claims for declaratory, injunctive, and monetary relief against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official and individual capacity must be dismissed under FRCP 12(b)(6) because they are entitled to absolute legislative immunity as a matter of law. For that reason, Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

**VII.    Ribar's state law claims for declaratory, injunctive, and monetary relief against the State and the LCB and Ribar's state law claims for declaratory, injunctive, and monetary relief against Acting Director Thornton, General Counsel Powers, and the Lobbyist Registrar in their official and individual capacity must be dismissed.**

In his opposition, Ribar fails to make any arguments establishing a basis for the Court to exercise supplemental jurisdiction over Ribar's state law claims against Legislative Defendants. Therefore, because Ribar fails to state a federal claim as a matter of law, the Court must decline to exercise supplemental jurisdiction over Ribar's state law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). For that reason, Legislative Defendants' motion to dismiss must be granted, as a matter of law, without leave to amend.

Furthermore, the Court is prohibited by the Eleventh Amendment from exercising supplemental jurisdiction over Ribar's state law claims against Legislative Defendants because "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984); Doe v. Regents of Univ. of Cal, 891 F.3d 1147, 1152-54 (9th Cir. 2018); Freedom From Religion Found., Inc. v. Geithner, 715 F. Supp. 2d 1051, 1058-59 (E.D. Cal. 2010). For that reason, Legislative Defendants' motion to dismiss must be granted, as a

1  matter of law, without leave to amend.

2       Finally, even if the Court were permitted to exercise supplemental jurisdiction over Ribar's

3  state law claims against Legislative Defendants, all of Ribar's state law claims against all

4  Legislative Defendants would be barred under state law because they are entitled to immunity as a

5  matter of state law. In his opposition, Ribar states that, as a matter of state law, no immunity exists

6  for unconstitutional conduct based on the Nevada Supreme Court's decision in Mack v. Williams,

7  138 Nev. 854, 871-72 (2022) (ECF No. 34 at 4). Ribar is wrong as a matter of law. In Mack, the

8  Nevada Supreme Court held that, even though state officers and employees are not protected by

9  qualified immunity, as recognized under federal law, when they defend against state-law claims

10  arising under the Nevada Constitution, they are protected by **all other state-law immunities**

11  enacted by the Legislature or otherwise recognized under state law.  Mack, 138 Nev. at 871-72.

12       As thoroughly discussed in the motion to dismiss, all Legislative Defendants are entitled to

13  absolute legislative immunity as a matter of state law under NRS 41.071. See Legislature of Nev.

14  v. Settelmeyer, 137 Nev. 231, 238-40 (2021). Additionally, even if Legislative Defendants are

15  executing an invalid statute or regulation, they enjoy immunity under NRS 41.032(1) for any acts

16  or omissions committed by them **before** the statute or regulation is declared invalid. Therefore,

17  because Ribar's state law claims are premised on alleged acts or omissions by the Legislative

18  Defendants in the execution and administration of NRS Chapter 218H and Joint Standing Rule 25,

19  which have not been declared invalid by a court of competent jurisdiction, Ribar's state law claims

20  are barred by immunity as a matter of state law under NRS 41.032(1). Finally, the official actions

21  taken by Legislative Defendants in the execution and administration of NRS Chapter 218H and

22  Joint Standing Rule 25 are the exact types of policy-making actions that discretionary-function

23  immunity under NRS 41.032(2) was intended to protect. Therefore, Ribar's state law claims are

24  barred by immunity as a matter of state law under NRS 41.032(2).

## CONCLUSION

Based upon their motion to dismiss and reply, Legislative Defendants respectfully ask the Court to grant their motion to dismiss the FAC, without leave to amend, and dismiss, as a matter of law, all claims in the FAC against all Legislative Defendants and to enter judgment in favor of all Legislative Defendants accordingly.

DATED:    This __**18th**__ day of July, 2025.

By:    /s/  Kevin C. Powers
         **KEVIN C. POWERS**, General Counsel
         Nevada State Bar No. 6781
         **JAIME K. BLACK**, Chief Deputy General Counsel
         Nevada State Bar No. 11668
         **TARA C. ZIMMERMAN**, Chief Employment Counsel
         Nevada State Bar No. 12146
         NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
         *Attorneys for Defendants*

**ADDENDUM**

**ACCREDITATION OF NEWS MEDIA**

   **Joint Standing Rule No. 25. Procedures and Standards for Accreditation; Disqualifications; Definition of "Bona Fide News Medium."**

   1.   If a person is accredited as a member of a bona fide news medium in accordance with the requirements in this Rule, the person may be granted the privilege of accessing any areas designated for members of a bona fide news medium on the floor or in the chambers of the Senate and Assembly, subject to the approval, regulation and supervision of the Majority Leader of the Senate and the Speaker of the Assembly.

   2.   If a person wants to be considered for accreditation as a member of a bona fide news medium, the person must complete and file an application for accreditation with the Director of the Legislative Counsel Bureau. The application must include:

   (a)  The person's full name, telephone number and electronic mail address and a copy of a driver's license or other photo identification deemed sufficient by the Director to identify the person.

   (b)  The name of each bona fide news medium that the person works for or represents and the business address, telephone number and electronic mail address of each such bona fide news medium.

   (c)  Documentary or other evidence deemed sufficient by the Director to establish that the person works for or represents a bona fide news medium. Such evidence may include a copy of an identification badge issued by a bona fide news medium or, in the absence of such an identification badge, any other evidence deemed sufficient by the Director to establish that the person works for or represents a bona fide news medium.

   (d)  Any other information or evidence that the Director determines is necessary to carry out the provisions of this Rule.

   3.   In addition to the requirements of subsection 2, the application must include:

   (a)  A declaration that the person is not registered as a lobbyist pursuant to chapter 218H of NRS and, to the best of the person's knowledge and belief at that time, does not intend to register as a lobbyist or engage in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS.

   (b)  An acknowledgment that, if the person is accredited as a member of a bona fide news medium and thereafter registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter, the person shall be deemed to have forfeited the person's accreditation, and the person must return the person's identification badge as a member of a bona fide news medium to the Legislative Counsel Bureau.

   4.   When any applications are filed pursuant to this Rule, the Director shall, as soon as reasonably practicable:

   (a)  Review the applications for compliance with the requirements in this Rule and prepare lists naming the persons whose applications the Director has made a preliminary determination and recommendation that the applications comply with the requirements in this Rule;

   (b)  Submit such lists to the Secretary of the Senate and the Chief Clerk of the Assembly for review and approval by the Majority Leader of the Senate and the Speaker of the Assembly; and

(c)  Prepare identification badges for the persons named in such lists.

5.    The applications of the persons named in such lists and their accreditation as members of a bona fide news medium shall be deemed approved by the Majority Leader of the Senate and the Speaker of the Assembly if their names are read or entered into the Journals of the Senate and Assembly.

6.    Any decisions to approve, deny, suspend or revoke the accreditation of a member of a bona fide news medium, or discipline such a member for violations of any rules or policies, is at the sole discretion of the Majority Leader of the Senate and the Speaker of the Assembly.

7.    The Legislative Counsel Bureau shall act as the administrative liaison between any applicants or accredited members of a bona fide news medium and the Senate and Assembly for purposes of accepting and processing applications for accreditation, preparing and regulating identification badges and administering any other matters necessary to carry out the provisions of this Rule, but such actions by the Legislative Counsel Bureau do not affect the authority of the Senate and Assembly to govern their own chambers or otherwise determine privileges of the floor.

8.    A person is disqualified and barred from being accredited as a member of a bona fide news medium if the person registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter. If a person is accredited as a member of a bona fide news medium and thereafter registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter, the person shall be deemed to have forfeited the person's accreditation, and the person must return the person's identification badge as a member of a bona fide news medium to the Legislative Counsel Bureau.

9.    As used in this Rule, "bona fide news medium" means a commercial or non-profit news outlet providing:

(a)  Print journalism, such as newspapers or magazines;

(b)  Broadcast journalism, such as radio or television;

(c)  Wire or news services for redistribution to other news organizations; or

(d)  Online news services using electronic dissemination rather than conventional print or broadcast distribution.

[Assembly Concurrent Resolution No. 1 of the 2025 Session (File No. 7)]

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal Division, and that on the __18th__ day of July, 2025, pursuant to FRCP 5(b) and LR Part IC, I filed and served a true and correct copy of Legislative Defendants' Reply in Support of Motion to Dismiss First Amended Complaint by (1) using the Court's CM/ECF system for electronic service and (2) sending it via electronic mail pursuant to FRCP 5(b)(2)(E) and the parties' consent in writing to service by electronic mail, directed to the following:

Drew J. Ribar
3480 Pershing Ln.
Washoe Valley, NV 89704
const2audit@gmail.com
*Plaintiff Pro Se*


/s/  Kevin C. Powers
An Employee of the Legislative Counsel Bureau