KEVIN C. POWERS, General Counsel
Nevada State Bar No. 6781
JAIME K. BLACK, Chief Deputy General Counsel
Nevada State Bar No. 11668
TARA C. ZIMMERMAN, Chief Employment Counsel
Nevada State Bar No. 12146
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
401 S. Carson St.
Carson City, NV 89701
Tel: (775) 684-6830; Fax: (775) 684-6761
Email: kpowers@lcb.state.nv.us; jaime.black@lcb.state.nv.us; tara.zimmerman@lcb.state.nv.us
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DREW J. RIBAR,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>STATE OF NEVADA; NEVADA LEGISLATIVE COUNSEL BUREAU; KEVIN C. POWERS, in his official and individual capacity; LOBBYIST REGISTRAR, in their official and individual capacity; DIANE C. THORNTON, in her official capacity as the Acting Director of the Nevada Legislative Counsel Bureau; and DOE DEFENDANTS 1-10,<br><br>　　　Defendants. | Case No. 3:25-cv-00090-ART-CSD<br><br>**DEFENDANTS' MOTION TO VACATE ORDER SETTING CASE MANAGEMENT CONFERENCE (ECF NO. 33) AND TO STAY ALL DISCOVERY AND RELATED PRETRIAL PROCEEDINGS UNTIL AFTER RESOLUTION OF PENDING MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF NO. 31)** |

Defendants State of Nevada; Nevada Legislative Counsel Bureau ("LCB"); Kevin C. Powers, in his official and individual capacity; Lobbyist Registrar, in their official and individual capacity; and Diane C. Thornton, in her official capacity as the Acting Director of the LCB (collectively "Legislative Defendants"), by and through their counsel the Legal Division of the LCB ("LCB Legal"), hereby file their motion to vacate the Order Setting Case Management Conference (ECF No. 33) and to stay all discovery and related pretrial proceedings until after

resolution of the pending motion to dismiss Plaintiff Ribar's first amended complaint ("FAC") (ECF No. 31).[1] Legislative Defendants' motion is made under FRCP 7(b) and LR 7-2 and is based upon the following Memorandum of Points and Authorities and all pleadings, documents, and exhibits on file in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  Introduction.**

In the pending motion to dismiss, Legislative Defendants have set forth several colorable and viable defenses based on subject-matter jurisdiction, supplemental jurisdiction, absolute legislative immunity, qualified immunity, and state-law immunities that can be resolved based on well-established legal doctrines, without any additional fact-finding or discovery. If the pending motion to dismiss is granted, it will be dispositive of all federal and state claims alleged in the FAC, and there will be no valid reason for discovery and related pretrial proceedings to be conducted by the Court and the parties in this case.

With regard to absolute legislative immunity, Legislative Defendants have set forth colorable and viable defenses that they are protected by absolute legislative immunity from all federal and state claims alleged in the FAC. See Reeder v. Madigan, 780 F.3d 799, 802-06 (7th Cir. 2015); Legislature of Nev. v. Settelmeyer, 137 Nev. 231, 238 (2021). As a result, the Court has an obligation to decide the issue of absolute legislative immunity **before** any discovery and related pretrial proceedings are conducted so that the immunity defenses are not vitiated by Legislative Defendants being "subjected to the burdens of such pretrial matters as discovery." HIRA Educ. Servs. N. Am. v. Augustine, 991 F.3d 180, 188 (3d Cir. 2021).

---

[1] In the FAC, Ribar adds Brenda J. Erdoes as a Defendant in her former official capacity as the Director of the LCB. However, Ms. Erdoes retired from the LCB more than 14 months ago on April 1, 2024, before the alleged events being challenged in the FAC. Therefore, the current Acting Director of the LCB, Diane C. Thornton, is "automatically substituted as a party" in her official capacity under FRCP 25(d).

Additionally, even if the pending motion to dismiss is denied, Legislative Defendants would have the right under the collateral order doctrine to pursue an immediate appeal and interlocutory judicial review because the protection of absolute legislative immunity "would be irreparably lost if an appeal had to await the final judgment." United States v. McDade, 28 F.3d 283, 288 (3d Cir. 1994); HIRA Educ. Servs., 991 F.3d at 187-88. Accordingly, even if the pending motion to dismiss is denied, Legislative Defendants would seek to stay the district court proceedings, including all discovery and related pretrial proceedings, while they pursued their right under the collateral order doctrine to an immediate appeal and interlocutory judicial review of the denial of the immunity defenses. See FRAP 8; HIRA Educ. Servs., 991 F.3d at 187-88; Allman v. Smith, 764 F.3d 682, 684 (7th Cir. 2014). Therefore, to carry out one of the primary and important purposes of the immunity defenses and to further the goal of efficiency for the Court and the parties in this case, the Court should grant Legislative Defendants' motion to vacate the Order Setting Case Management Conference (ECF No. 33) and stay all discovery and related pretrial proceedings until after resolution of the pending motion to dismiss (ECF No. 31).

**II.   Background.**

In his original complaint (ECF No. 1) and motion for preliminary injunction (ECF No. 4), which were both served on Legislative Defendants on February 21, 2025, Ribar raised federal constitutional claims pursuant to 42 U.SC. § 1983 for alleged violations of his civil rights under the First Amendment to the Federal Constitution. Ribar also raised state constitutional claims alleging violations of his rights under Article 1, Sections 9 and 10 of the Nevada Constitution, which guarantee rights equivalent to the rights guaranteed by the First Amendment. See Univ. & Cmty. Coll. Sys. v. Nevadans for Sound Gov't, 120 Nev. 712, 722 (2004). Ribar asserted federal-question jurisdiction under 28 U.SC. § 1331 and federal civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3)-(4).

Ribar challenged Legislative Defendants' interpretation and application of the provisions of (1) Nevada Lobbying Disclosure and Regulation Act ("Lobbying Act") in NRS Chapter 218H; and (2) Joint Standing Rule 25 of the Senate and Assembly for the 83rd Session of the Nevada Legislature adopted in Assembly Concurrent Resolution No. 1 (Feb. 3, 2025).[2] Under those provisions, a person is not permitted to register as a lobbyist, whether paid or unpaid, and also be granted media credentials by the Senate and Assembly. When a person is granted such media credentials, the person may be granted the privilege of accessing any areas designated for members of a bona fide news medium on the floor or in the chambers of the Senate and Assembly, subject to the approval, regulation, and supervision of the Majority Leader of the Senate and the Speaker of the Assembly.

However, persons registered as lobbyists are not required to obtain such media credentials in order to carry out any journalism or news gathering functions in other unrestricted areas of the legislative chambers or in other unrestricted areas of the Legislative Building, such as in committee rooms or legislative halls. Therefore, even though registered lobbyists cannot obtain such media credentials under NRS Chapter 218H and Joint Standing Rule 25, registered lobbyists still may carry out any journalism or news gathering functions in the Legislative Building without such media credentials, except registered lobbyists cannot be granted the privilege of accessing the media areas designated on the legislative floor or in the legislative chambers where lobbying activities are generally restricted.

On March 21, 2025, Legislative Defendants filed a motion to dismiss Ribar's original complaint (ECF No. 16) and a response in opposition to Ribar's motion for preliminary injunction (ECF No. 17). Ribar did not file a response in opposition to the motion to dismiss or a reply in

---

[2] Joint Standing Rule 25 is reproduced in the Addendum following the Memorandum of Points and Authorities. Assembly Concurrent Resolution No. 1 is available at: https://www.leg.state.nv.us/Session/83rd2025/Bills/ACR/ACR1_EN.pdf.

support of his motion for preliminary injunction. Instead, on April 22, 2025, Ribar filed a motion for leave to file a first amended complaint (ECF No. 22).

On May 28, 2025, the Court entered an order (ECF No. 26) that granted Ribar's motion for leave to file the FAC. In the order, the Court denied: (1) Ribar's motion for preliminary injunction (ECF No. 4) as moot and without prejudice; and (2) Legislative Defendants' motion to dismiss (ECF No. 16) as moot and without prejudice. On May 29, 2025, the Court entered a minute order in chambers (ECF No. 27) directing the Clerk to electronically file and serve the FAC under LR 15-1(b), which the Clerk completed on that same date (ECF No. 28).

In the FAC, Ribar raises federal constitutional claims pursuant to 42 U.SC. § 1983 for alleged violations of his civil rights under the First and Fourteenth Amendments to the Federal Constitution. Ribar also raises state constitutional claims alleging violations of his rights under Article 1, Sections 8, 9, and 10 of the Nevada Constitution (ECF No. 28). On June 26, 2025, Legislative Defendants filed their motion to dismiss the FAC (ECF No. 31). On July 11, 2025, Ribar filed his opposition to the motion to dismiss (ECF No. 34). On July 18, 2025, Legislative Defendants filed their reply in support of the motion to dismiss (ECF No. 35).

### III. Legal standards and argument.

The Court "has wide discretion in controlling discovery," and it may stay discovery and related pretrial proceedings until after it rules on particular issues in the case, especially where "[t]he stay furthers the goal of efficiency for the court and litigants." Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988). As a general rule, "a pending Motion to Dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery." Twin City Fire Ins. Co. v. Employers Ins. of Wausau, 124 F.R.D. 652, 653 (D. Nev. 1989). However, "[c]ommon situations in which a court may determine that staying discovery pending a ruling on a dispositive motion occur when dispositive motions raise issues of jurisdiction, venue, or immunity." Tradebay, LLC

v. eBay, Inc., 278 F.R.D. 597, 601 (D. Nev. 2011).

In deciding whether to stay discovery and related pretrial proceedings, the Court is guided by the objectives of FRCP 1 to ensure a "just, speedy, and inexpensive determination of every action." Kor Media Group v. Green, 294 F.R.D. 579, 581 (D. Nev. 2013). Additionally, the Court is guided by the following factors:

> [M]otions to stay discovery may be granted when: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief.

Id.; Corbett v. Pub. Employees' Ret. Sys. ex rel. Nev., No. 2:20-CV-02149-KJD-NJK, 2021 WL 297564, at *1 (D. Nev. Jan. 28, 2021).

In this case, if the pending motion to dismiss is granted, it will be dispositive of **all federal and state claims** alleged in Ribar's FAC (ECF No. 31 at 4-21). The pending motion to dismiss involves threshold issues of subject-matter jurisdiction, supplemental jurisdiction, absolute legislative immunity, qualified immunity, and state-law immunities that can be resolved based on well-established legal doctrines (ECF No. 31 at 4-21). Because the application of those legal doctrines in this case does not require any additional fact-finding, the pending motion to dismiss can be decided without additional discovery.

Furthermore, because the federal common law provides legislators and legislative staff with the protection of absolute legislative immunity under section 1983, a district court has an obligation to decide the issue of absolute legislative immunity at the earliest possible stage in the proceedings. See Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 511 n.17 (1975) (explaining that motions to dismiss based on absolute legislative immunity must be "given the most expeditious treatment by district courts."). As a general rule, a district court should decide the issue of absolute legislative immunity **before** any discovery and related pretrial proceedings are

conducted. See HIRA Educ. Servs. N. Am. v. Augustine, 991 F.3d 180, 187-88 (3d Cir. 2021); Siegert v. Gilley, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring) ("[A]voidance of disruptive discovery is one of the very purposes for the official immunity doctrine."). Because of this rule, a district court generally errs if it attempts to delay ruling on the issue of absolute legislative immunity until after discovery and related pretrial proceedings because "[s]uch delay vitiates immunity as government officials otherwise entitled to immunity [are] nonetheless subjected to the burdens of such pretrial matters as discovery." HIRA Educ. Servs., 991 F.3d at 188 (quoting Oliver v. Roquet, 858 F.3d 180, 188 (3d Cir. 2017) and Behrens v. Pelletier, 516 U.S. 299, 308 (1996) (internal quotations omitted)).

The reason for this rule is that absolute legislative immunity is not only a defense to a finding of liability and damages, it is also an entitlement not to stand trial or face the costly and intrusive burdens of litigation, including discovery and related pretrial proceedings. See Supreme Ct. of Va. v. Consumers Union, 446 U.S. 719, 732 (1980) (explaining that legislators and legislative staff who are entitled to legislative immunity "should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." (quoting Dombrowski v. Eastland, 387 U.S. 82, 85 (1967))). Thus, when an action is brought against legislators and legislative staff and it is established in a motion to dismiss that their conduct is protected by absolute legislative immunity, the action must be dismissed as a matter of law before legislators and legislative staff are burdened with costly and intrusive discovery and related pretrial proceedings. See Tenney v. Brandhove, 341 U.S. 367, 370-79 (1951); HIRA Educ. Servs., 991 F.3d at 185-90.

In the pending motion to dismiss, Legislative Defendants have set forth colorable and viable defenses that they are protected by absolute legislative immunity from all federal claims alleged in Ribar's FAC (ECF No. 31 at 12-17). In particular, several federal courts have found that absolute

legislative immunity protects legislators and legislative staff from actions for monetary, declaratory, and injunctive relief which challenge decisions that restrict or prohibit lobbyists, the press, or the public from having access to legislative chambers or other legislative facilities in order to protect the safety, integrity, and due functioning of the legislative process. Reeder v. Madigan, 780 F.3d 799, 802-06 (7th Cir. 2015) (holding that state legislators and legislative staff were entitled to absolute legislative immunity for their decision to deny media credentials to reporter employed by entity related to lobbying organization); Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 629-35 (1st Cir. 1995); Consumers Union v. Periodical Correspondents' Ass'n, 515 F.2d 1341, 1347-51 (D.C. Cir. 1975); Empower Texans v. Geren, 388 F.Supp.3d 738, 742-48 (W.D. Tex. 2019), *vacated as moot*, 977 F.3d 367, 372 (5th Cir. 2020) (finding that Empower's appeal had become moot because "Empower never asked this court to expedite its appeal.").

These federal courts have applied the protection of absolute legislative immunity to decisions curtailing access to legislative chambers or other legislative facilities because of their "view of a legislature's House as its castle." Harwood, 69 F.3d at 632. And these federal courts have recognized that controlling access to legislative chambers or other legislative facilities is "a core legislative function" that must be protected by absolute legislative immunity because "[a] contrary rule would make it nearly impossible for a legislature to function, as it would potentially subject legislators and their aides to liability for every floor-access decision they make." Reeder, 780 F.3d at 803-04.

Additionally, in the pending motion to dismiss, Legislative Defendants have set forth colorable and viable defenses that they are protected by absolute legislative immunity from all state claims alleged in Ribar's FAC (ECF No. 31 at 17-20). Specifically, in applying absolute legislative immunity in Nevada, "the interpretation and application given to the constitutional

doctrines of separation of powers and legislative privilege and immunity under the Speech or Debate Clause of Section 6 of Article I of the Constitution of the United States must be considered to be persuasive authority." NRS 41.071(3). Accordingly, the Nevada Supreme Court follows federal cases "addressing NRS 41.071(3)'s federal counterpart" to guide the court in its interpretation and application of absolute legislative immunity in Nevada. Legislature of Nev. v. Settelmeyer, 137 Nev. 231, 238 (2021). Because federal cases have applied the protection of absolute legislative immunity to decisions curtailing access to legislative chambers or other legislative facilities, those federal cases are applicable to the interpretation and application of absolute legislative immunity in Nevada. See Reeder, 780 F.3d at 802-06; Harwood, 69 F.3d at 629-35; Consumers Union, 515 F.2d at 1347-51; Empower Texans, 388 F.Supp.3d at 742-48.

Accordingly, given that Legislative Defendants have set forth colorable and viable defenses that they are protected by absolute legislative immunity from all federal and state claims alleged in Ribar's FAC, the Court should decide the issue of absolute legislative immunity **before** any discovery and related pretrial proceedings are conducted in this case so that the immunity defenses are not vitiated from Legislative Defendants being "subjected to the burdens of such pretrial matters as discovery." HIRA Educ. Servs., 991 F.3d at 188. To that end, the Court should grant Legislative Defendants' motion to vacate the Order Setting Case Management Conference (ECF No. 33) and stay all discovery and related pretrial proceedings until after resolution of the pending motion to dismiss (ECF No. 31).

Finally, even if the pending motion to dismiss is denied, legislators and legislative staff have the right under the collateral order doctrine to pursue an immediate appeal and interlocutory judicial review because the protection of absolute legislative immunity "would be irreparably lost if an appeal had to await the final judgment." United States v. McDade, 28 F.3d 283, 288 (3d Cir. 1994); HIRA Educ. Servs., 991 F.3d at 187-88. An immediate appeal is permitted "because the

doctrine is designed to protect legislators not only from ultimate liability, but also from the cost and inconvenience of litigation." Gross v. Winter, 876 F.2d 165, 166 n.1 (D.C. Cir. 1989). Consequently, the Supreme Court and lower federal courts have repeatedly held that the denial of a motion to dismiss based on legislative immunity is immediately appealable and subject to interlocutory judicial review. Helstoski v. Meanor, 442 U.S. 500, 506-08 (1979); Agromayor v. Colberg, 738 F.2d 55, 57-58 (1st Cir. 1984); Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003); HIRA Educ. Servs., 991 F.3d at 187-88; Larsen v. Senate of Pa., 152 F.3d 240, 245 (3d Cir. 1998); Youngblood v. DeWeese, 352 F.3d 836, 838-39 (3d Cir. 2003); Roberson v. Mullins, 29 F.3d 132, 134 n.1 (4th Cir. 1994); Williams v. Brooks, 945 F.2d 1322, 1325 (5th Cir. 1991); Maitland v. Univ. of Minn., 260 F.3d 959, 962 (8th Cir. 2001); Chateaubriand v. Gaspard, 97 F.3d 1218, 1220 (9th Cir. 1996); Woods v. Gamel, 132 F.3d 1417, 1419 n.3 (11th Cir. 1998); Crymes v. DeKalb County, 923 F.2d 1482, 1484-85 (11th Cir. 1991); Fields v. Office of Johnson, 459 F.3d 1, 4 n.1 (D.C. Cir. 2006); Gross v. Winter, 876 F.2d 165, 166 n.1 (D.C. Cir. 1989).

Accordingly, even if the pending motion to dismiss is denied, Legislative Defendants would seek to stay the district court proceedings, including all discovery and related pretrial proceedings, while they pursued their right under the collateral order doctrine to an immediate appeal and interlocutory judicial review of the denial of the immunity defenses. See FRAP 8; HIRA Educ. Servs., 991 F.3d at 187-88 (explaining that under the collateral order doctrine, orders denying absolute or qualified immunity are immediately appealable and subject to interlocutory judicial review); Allman v. Smith, 764 F.3d 682, 684 (7th Cir. 2014) ("[W]hen a public official takes an interlocutory appeal to assert a colorable claim to absolute or qualified immunity from damages, the district court must stay proceedings." (quoting Goshtasby v. Bd. of Trs. of Univ. of Ill., 123 F.3d 427, 428 (7th Cir.1997))). Therefore, to carry out one of the primary and important purposes

of the immunity defenses and to further the goal of efficiency for the Court and the parties in this case, the Court should grant Legislative Defendants' motion to vacate the Order Setting Case Management Conference (ECF No. 33) and stay all discovery and related pretrial proceedings until after resolution of the pending motion to dismiss (ECF No. 31).

## CONCLUSION

Based upon the foregoing, Legislative Defendants respectfully ask the Court to grant their motion to vacate the Order Setting Case Management Conference (ECF No. 33) and to stay all discovery and related pretrial proceedings until after resolution of the pending motion to dismiss the FAC (ECF NO. 31).

DATED: This **22nd** day of July, 2025.

By: /s/ Kevin C. Powers
**KEVIN C. POWERS**, General Counsel
Nevada State Bar No. 6781
**JAIME K. BLACK**, Chief Deputy General Counsel
Nevada State Bar No. 11668
**TARA C. ZIMMERMAN**, Chief Employment Counsel
Nevada State Bar No. 12146
NEVADA LEGISLATIVE COUNSEL BUREAU, LEGAL DIVISION
*Attorneys for Defendants*

# ADDENDUM

# ACCREDITATION OF NEWS MEDIA

**Joint Standing Rule No. 25. Procedures and Standards for Accreditation; Disqualifications; Definition of "Bona Fide News Medium."**

1. If a person is accredited as a member of a bona fide news medium in accordance with the requirements in this Rule, the person may be granted the privilege of accessing any areas designated for members of a bona fide news medium on the floor or in the chambers of the Senate and Assembly, subject to the approval, regulation and supervision of the Majority Leader of the Senate and the Speaker of the Assembly.

2. If a person wants to be considered for accreditation as a member of a bona fide news medium, the person must complete and file an application for accreditation with the Director of the Legislative Counsel Bureau. The application must include:

   (a) The person's full name, telephone number and electronic mail address and a copy of a driver's license or other photo identification deemed sufficient by the Director to identify the person.

   (b) The name of each bona fide news medium that the person works for or represents and the business address, telephone number and electronic mail address of each such bona fide news medium.

   (c) Documentary or other evidence deemed sufficient by the Director to establish that the person works for or represents a bona fide news medium. Such evidence may include a copy of an identification badge issued by a bona fide news medium or, in the absence of such an identification badge, any other evidence deemed sufficient by the Director to establish that the person works for or represents a bona fide news medium.

   (d) Any other information or evidence that the Director determines is necessary to carry out the provisions of this Rule.

3. In addition to the requirements of subsection 2, the application must include:

   (a) A declaration that the person is not registered as a lobbyist pursuant to chapter 218H of NRS and, to the best of the person's knowledge and belief at that time, does not intend to register as a lobbyist or engage in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS.

   (b) An acknowledgment that, if the person is accredited as a member of a bona fide news medium and thereafter registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter, the person shall be deemed to have forfeited the person's accreditation, and the person must return the person's identification badge as a member of a bona fide news medium to the Legislative Counsel Bureau.

4. When any applications are filed pursuant to this Rule, the Director shall, as soon as reasonably practicable:

   (a) Review the applications for compliance with the requirements in this Rule and prepare lists naming the persons whose applications the Director has made a preliminary determination and recommendation that the applications comply with the requirements in this Rule;

   (b) Submit such lists to the Secretary of the Senate and the Chief Clerk of the Assembly for review and approval by the Majority Leader of the Senate and the Speaker of the Assembly; and

(c) Prepare identification badges for the persons named in such lists.

5. The applications of the persons named in such lists and their accreditation as members of a bona fide news medium shall be deemed approved by the Majority Leader of the Senate and the Speaker of the Assembly if their names are read or entered into the Journals of the Senate and Assembly.

6. Any decisions to approve, deny, suspend or revoke the accreditation of a member of a bona fide news medium, or discipline such a member for violations of any rules or policies, is at the sole discretion of the Majority Leader of the Senate and the Speaker of the Assembly.

7. The Legislative Counsel Bureau shall act as the administrative liaison between any applicants or accredited members of a bona fide news medium and the Senate and Assembly for purposes of accepting and processing applications for accreditation, preparing and regulating identification badges and administering any other matters necessary to carry out the provisions of this Rule, but such actions by the Legislative Counsel Bureau do not affect the authority of the Senate and Assembly to govern their own chambers or otherwise determine privileges of the floor.

8. A person is disqualified and barred from being accredited as a member of a bona fide news medium if the person registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter. If a person is accredited as a member of a bona fide news medium and thereafter registers as a lobbyist or engages in any lobbying activities that would require the person to register as a lobbyist during any regular or special session pursuant to chapter 218H of NRS, regardless of whether the person properly registers or fails to register as a lobbyist as required by that chapter, the person shall be deemed to have forfeited the person's accreditation, and the person must return the person's identification badge as a member of a bona fide news medium to the Legislative Counsel Bureau.

9. As used in this Rule, "bona fide news medium" means a commercial or non-profit news outlet providing:

(a) Print journalism, such as newspapers or magazines;
(b) Broadcast journalism, such as radio or television;
(c) Wire or news services for redistribution to other news organizations; or
(d) Online news services using electronic dissemination rather than conventional print or broadcast distribution.

[Assembly Concurrent Resolution No. 1 of the 2025 Session (File No. 7)]

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the Nevada Legislative Counsel Bureau, Legal Division, and that on the __22nd__ day of July, 2025, pursuant to FRCP 5(b) and LR Part IC, I filed and served a true and correct copy of Legislative Defendants' Motion to Vacate Order Setting Case Management Conference and to Stay All Discovery and Related Pretrial Proceedings Until After Resolution of Pending Motion to Dismiss First Amended Complaint (ECF NO. 31) by (1) using the Court's CM/ECF system for electronic service and (2) sending it via electronic mail pursuant to FRCP 5(b)(2)(E) and the parties' consent in writing to service by electronic mail, directed to the following:

Drew J. Ribar
3480 Pershing Ln.
Washoe Valley, NV 89704
const2audit@gmail.com
*Plaintiff Pro Se*

/s/ Kevin C. Powers
An Employee of the Legislative Counsel Bureau